AIRLINES REPORTING CORPORA-
TION, a Delaware corporation,
Appellee,

v.

Garrett J. BARRY, a/k/a Gary Barry, a/k/a Gary Jackson, a/k/a Gary Jackson d/b/a Gary Jackson Travel, a/k/a Gary Boosalis, a/k/a Richard Arthur, a/k/a Richard Arthur Barnes Barry, a/k/a Richard A. Barnes-Barry, a/k/a James Barry, et al.

Marie K. Michaeloff, a/k/a Marie Bridgeman, et al., Appellants,

Associated Travel Agents, Inc., d/b/a Boosalis Travel, et al.

See also, D.C., 666 F.Supp. 1311.

AIRLINES REPORTING CORPORA-
TION, a Delaware corporation,
Appellee,

v.

Garrett J. BARRY, a/k/a Gary Barry, a/k/a Gary Jackson, a/k/a Gary Jackson d/b/a Gary Jackson Travel, a/k/a Gary Boosalis, a/k/a Richard A. Barnes-Barry, a/k/a James Barry, et al., Appellants,

Dollar Travel Agency, Inc., a Minn. corp., et al., Appellants;

Thrifty Travel, Inc., an Arizona corp., et al.

Nos. 86–5138, 86–5155.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1986.

Decided July 29, 1987.

Randall D.B. Tigue, Minneapolis, Minn., for appellants.

William Z. Pentelovitch, Minneapolis, Minn., for appellee.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Marie Michaeloff and David Schroeder, represented by counsel, and pro se appellants Garrett Barry, Corrine Barry, Faith Long, and Lois Miller, all defendants below, bring these interlocutory appeals[1] from the order of the District Court granting a preliminary injunction in favor of plaintiff Airlines Reporting Corporation (ARC). The case involves claims based on the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* (RICO), as well as claims based on the Minnesota law of fraud and conversion. All the claims arise from an alleged scheme by the various defendants to defraud ARC of substantial amounts of money generated by the sale of airline tickets.

Appellants contend that the District Court erred in granting the preliminary injunction because (1) injunctive relief is not available to civil litigants under RICO;

---

1. Upon its own motion, this Court ordered that the pro se appeal (No. 86–5151) be submitted on the briefs without oral argument and that the companion case (No. 86–5138), in which the appellants are represented by counsel, be submitted after oral argument. The two appeals have been consolidated for purposes of this opinion. For convenience, issues raised in both appeals are discussed as though raised identically by each appellant. Where facts pertaining to a particular issue make such treatment inappropriate, the particular appellant or appellants raising the issue are specifically identified.

(2) the injunction violates appellants' First Amendment rights by denying them access to federal and state courts; (3) the injunction, by prohibiting them from prosecuting an existing state law case, violates the Anti-Injunction Act, 28 U.S.C. § 2283, and principles of federal-state comity; (4) the injunction is overly broad; and (5) ARC failed to satisfy the four-part test set forth by this Court in *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109, 113 (8th Cir.1981) (en banc), for determining whether a preliminary injunction should be granted. We affirm.

## I.

ARC is a clearinghouse for airline tickets. It is owned by approximately 24 commercial air carriers. ARC accredits travel agencies to sell airline tickets to the public. In accordance with the contracts between ARC and the accredited travel agencies, the proceeds of ticket sales are held in trust for the air carriers. ARC acts as a go-between, collecting the proceeds and distributing them to the appropriate airlines.

According to ARC records, between February and June 1985 three separately incorporated travel agencies (which had been incorporated for short periods of time) reported ticket sales which totalled more than $3 million but failed to turn that money over to ARC. Each agency closed immediately after reporting these sales. ARC brought state-court actions against these agencies in Minnesota and Arizona. During discovery, ARC learned that the three agencies were linked to each other

and to a fourth agency which had closed in a similar fashion in 1982.[2] Thereafter, ARC brought this action in the District Court.

The gravamen of ARC's case is that defendants were involved in a complex scheme to defraud it of airline ticket proceeds. ARC alleges that defendants issued tickets to themselves without making payment, failed to remit proceeds, and stole blank ticket stock; that defendants sold some of these tickets (both blank and completed) at discounted prices; that defendants used, obtained refunds, or attempted to obtain refunds from the airlines on other tickets; and that defendants continue to hold a large portion of the missing blank ticket stock for future use or sale.[3] ARC seeks compensatory and punitive damages, recovery of the missing tickets, and injunctive relief.

The District Court granted ARC's motions for a preliminary injunction and for an order of replevin with respect to the missing tickets and other air traffic documents. Defendants have appealed only the order granting a preliminary injunction. The injunction prohibits defendants from, *inter alia*, using the missing tickets and blank airline ticket stock in any way; owning or working for any organization affiliated with ARC; participating in any scheme to defraud ARC or its affiliated airlines; and pursuing any civil action seeking any relief "relating to any air traffic documents, tickets, or claimed payments."[4] Order of March 10, 1986, at 4.

---

**2.** The agencies in question are Dollar Travel Agency, Inc. of Minneapolis, Minnesota; Budget Travel, Inc. of Minneapolis, Minnesota; Princess Travel, Inc. of Minneapolis, Richfield, and St. Louis Park, Minnesota; and Dial Travel, Inc. of Phoenix, Arizona.

**3.** The FBI is conducting an investigation. In addition, there have been two criminal prosecutions arising out of the interstate transportation of tickets involved in the Dollar Travel Agency default; Charlotte Skjonsby pled guilty, while Frederick Kraemer was found guilty in a jury trial. We affirmed his conviction in *United States v. Kraemer*, 767 F.2d 929 (8th Cir.1985) (unpublished) and thereafter affirmed a denial of his 28 U.S.C. § 2255 motion to vacate his sentence in *United States v. Kraemer*, 810 F.2d 173 (8th Cir.1987) (per curiam).

**4.** The full text of the injunction is as follows:
The court having considered the briefs and arguments of counsel and the entire file, does HEREBY ORDER, except for the First Bank Hopkins and Selmar Undem [a bank officer], that the defendants, and each of them, their officers, agents, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of the court's order, be enjoined:
1. From selling, using, submitting for refund, obtaining refunds, exchanging, or otherwise disposing of Air Traffic Conference [ARC's predecessor] ("ATC") or ARC air traffic documents, including tickets and miscellaneous charge orders, which were delivered by ATC or ARC to defendants, or any of them, or

## II.

The District Court found authority to grant injunctive relief both in the RICO statute and in its inherent power to issue an injunction based on state law. Appellants challenge the power of the court to issue injunctive relief under RICO, arguing that RICO does not permit a private party in a civil action to obtain such relief. In *Bennett v. Berg*, 685 F.2d 1053, 1064 (8th Cir.1982), *aff'd on rehearing*, 710 F.2d 1361 (8th Cir.) (en banc), *cert. denied*, 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983), this Court, though suggesting that injunctive relief under RICO might be available to private litigants, expressly left the issue unresolved.[5] In the present case, we need not and do not reach this issue. ARC has asserted claims under state law

and the District Court clearly was correct in finding that it had inherent power to issue the injunction on state law grounds. *See, e.g., Agee Agricultural Equipment Sales v. Trail King Industries*, 800 F.2d 789, 791–92 (8th Cir.1986); *N.I.S. Corp. v. Swindle*, 724 F.2d 707, 710 (8th Cir.1984).

## III.

Schroeder and Michaeloff argue that the District Court is without authority to enjoin them from criminal activity. Relying on the ancient maxim that equity cannot enjoin a crime, they contest language in the injunction prohibiting them from "engaging in any plan, scheme, artifice, or enterprise to defraud ARC," Order at paragraph 3, including issuing, possessing, utilizing, or attempting to refund fraudulently held

which were issued by defendants, or any of them;

2. From being an owner, shareholder, investor, lender, director, officer, or employee of any corporation, partnership, association, entity, or enterprise of any kind or nature whatsoever which is party to an Agent Reporting Agreement with ARC, or which has submitted an application or request to become a party to an Agent Reporting Agreement with ARC, or which has submitted an application or request to become accredited or otherwise approved by ARC;

3. From engaging in any plan, scheme, artifice, or enterprise to defraud ARC or the airlines which participate in the programs it administers, including fraudulently issuing air traffic documents, stealing air traffic documents, possessing stolen or fraudulently issued or obtained air traffic documents, utilizing fraudulently issued, obtained, or stolen air traffic documents for air transportation, presenting fraudulently issued, obtained, or stolen air traffic documents for refund, or possessing fraudulently issued, obtained, or stolen air traffic documents;

4. From establishing any business, corporation, partnership, association, organization, entity, or enterprise, of any kind or nature whatsoever, the purpose of which is to deal in air traffic documents of any kind or nature whatsoever;

5. From defrauding the ARC in any manner or way whatsoever;

6. From commencing or prosecuting any civil action, in any state or federal court, seeking payment, refund, damages, or any other relief relating to any air traffic documents, tickets, or claimed payments.

Order at 3–4.

The order of replevin, issued pursuant to Minn.Stat. § 565.23, states that ARC is "entitled

to obtain immediate possession of all ATC and ARC air control documents, including tickets and miscellaneous charge orders, delivered by ATC or ARC to any of the defendants or issued by any of the defendants, which are in the possession or control of defendants, or any of them, or their officers, servants, agents, attorneys or other persons under their control, prior to final judgment in this matter." Order at 4–5. The court also ordered defendants to "formally disclose the whereabouts of any air traffic documents in their possession or under their control ... of which [they] have knowledge." *Id.* at 5.

5. The briefs submitted by the parties discuss at great length the availability of injunctive relief to civil litigants under the RICO statute. Several appellate courts have touched on this issue, *see Dan River, Inc. v. Icahn*, 701 F.2d 278, 290 (4th Cir.1983); *Trane Co. v. O'Connor Securities*, 718 F.2d 26, 28–29 (2d Cir.1983), but only one appellate court has directly confronted it. In *Religious Technology Center v. Wollersheim*, 796 F.2d 1076, 1080–89 (9th Cir.1986), *cert. denied*, — U.S. ——, 107 S.Ct. 1336, 94 L.Ed.2d 187 (1987), the Ninth Circuit denied injunctive relief, finding that Congress had not intended to provide an injunctive remedy to private civil RICO litigants.

We note in addition that several district courts have reached conflicting conclusions on this issue. *Compare Kaushal v. State Bank of India*, 556 F.Supp. 576 (N.D.Ill.1983) (injunctive relief not available) *with Aetna Casualty and Surety Co. v. Liebowitz*, 570 F.Supp. 908 (E.D.N.Y.1983) (injunctive relief available), *aff'd on other grounds*, 730 F.2d 905 (2d Cir.1984). For a more thorough discussion of the issue, see *Religious Technology Center*, 796 F.2d at 1081–82.

tickets and from "defrauding the ARC in any manner or way whatsoever." Order at paragraph 5. In support of their position, they refer us to federal case law holding that a federal court can enjoin a crime only in time of national emergency, widespread public nuisance, or where a specific statutory grant of power exists. *United States v. Jalas*, 409 F.2d 358, 360 (7th Cir.1969). They note that none of these conditions pertains here.

■ This argument may be legally sound, but it is totally misplaced. It simply has no application to this case. No court, state or federal, is barred from enjoining activity that causes or threatens injury to property merely because the activity, in addition to being tortious, is a violation of the criminal law. *See, e.g., Miller v. Minneapolis Underwriters Association*, 226 Minn. 367, 33 N.W.2d 48, 51 (1948); *Lanvin Parfums, Inc. v. Le Dans*, 9 N.Y.2d 516, 215 N.Y.S.2d 257, 260–61, 174 N.E.2d 920, 922, *cert. denied*, 368 U.S. 834, 82 S.Ct. 58, 7 L.Ed.2d 35 (1961); *Meyer v. Seifert*, 216 Ark. 293, 225 S.W.2d 4, 6–7 (1949); *Missouri Veterinary Medical Association v. Glisan*, 230 S.W.2d 169, 171–72 (Mo.Ct.App.1950). Here, the challenged portion of the injunction is designed to prevent defendants from perpetrating further acts of fraud against ARC. In that way, the injunction seeks to protect ARC from suffering additional pecuniary harm at defendants' hands. That the tortious activity enjoined by the District Court also may be a violation of one or more criminal statutes does not strip the court of power to issue the injunction.

## IV.

Appellants challenge that portion of the injunction prohibiting them "[f]rom commencing or prosecuting any civil action, in any state or federal court," with regard to the airline documents in question. Order at paragraph 6. They contend that this order violates their First Amendment right to petition the government for redress of grievances by denying them access to courts of their choosing. They also argue that principles of federal-state comity and the Anti-Injunction Act, 28 U.S.C. § 2283, prevent the District Court from enjoining pending or future state court actions.

■ With respect to appellants' First Amendment argument, we find no denial of their right to petition the government. The injunction does not deny appellants access to the District Court in which the present action was brought or from counterclaiming or crossclaiming wherever suit has been brought against them, but restrains only the proliferation of actions by defendants in other courts. Rules of procedure frequently force litigants into courts not of their choosing, but due process and the First Amendment require only that an impartial forum be available to litigants, and not that the doors of every courtroom in the land be open to them. Appellants here make no showing that the District Court is an inadequate forum for the resolution of their claims.

Appellants argue that a federal court injunction preventing them from suing in state court violates both the Anti-Injunction Act[6] and principles of federal-state comity elucidated by the Supreme Court in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and subsequent opinions.

■ Michaeloff, the only appellant prosecuting a state court proceeding prior to the time ARC sought its preliminary injunction in the present case, did not raise

---

**6.** The Anti-Injunction Act states:

A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. The Act does not preclude the enjoining of state court actions which begin after the request for injunctive relief is made in federal court. *National City Lines, Inc. v. LLC Corp.*, 687 F.2d 1122, 1127 (8th Cir.1982) (citing *Dombrowski v. Pfister*, 380 U.S. 479, 484 n. 2, 85 S.Ct. 1116, 1119–20 n. 2, 14 L.Ed.2d 22 (1965)). Michaeloff points out, however, that she is involved in a state court action against Delta Airlines that was commenced prior to the filing of ARC's lawsuit in federal court and argues that the enjoining of this state court action is precluded by the Anti-Injunction Act.

the Anti-Injunction Act in the District Court. Indeed, it does not appear that the Act was asserted in the District Court by any defendant. A showing of plain error resulting in a miscarriage of justice is required before we are willing to undertake review of issues not raised below. *Andrews v. Olin Mathieson Chemical Corp.,* 334 F.2d 422 (8th Cir.1964). No such showing has been made here. The Anti-Injunction Act is not jurisdictional. *Smith v. Apple,* 264 U.S. 274, 278–79, 44 S.Ct. 311, 313, 68 L.Ed. 678 (1924). Michaeloff's failure to assert the Act in the District Court bars her from obtaining review of this issue on appeal.

Michaeloff also argues that principles of comity require that the District Court abstain from interference in the state court action. In *Pennzoil Co. v. Texaco, Inc.,* —— U.S. ——, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), the Supreme Court applied the principles of *Younger* to a civil proceeding between private litigants, holding that a federal district court could not enjoin the Texas courts from requiring a bond equal to the amount of the judgment as a condition of appeal. The Court emphasized that the *Younger* doctrine requires a federal court to abstain from interfering with a state civil proceeding only where "the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." 107 S.Ct. at 1526. Finding such an important state interest in *Pennzoil,* the Court noted that the injunction issued by the district court involved "challenges to the processes by which the State compels compliance with the judgments of its courts." *Id.* at 1527. In a footnote, the Court expanded upon this point, stating:

> [C]ontrary to Justice STEVENS' suggestion [in concurrence], the State of Texas has an interest in this proceeding "that goes beyond its interest as adjudicator of wholly private disputes." *Our opinion does not hold that Younger abstention is always appropriate whenever a civil proceeding is pending in a state court.* Rather, as in *Juidice* [*v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376

(1977) ], we rely on the State's interest in protecting "the authority of the judicial system, so that its orders and judgments are not rendered nugatory."

*Id.* at 1527 n. 12 (emphasis added) (citations omitted).

█ In contrast to *Pennzoil,* no similarly important state interest is at stake here. No judgment has been issued by the state court in which Michaeloff's action is pending and no comparable state interest in protecting the authority of its judicial system is threatened by the injunction. Rather, the injunction will promote judicial economy and will speed the course of the litigation, interests which the federal and state courts share. In the action here enjoined, the state has no interest beyond that of adjudicating a wholly private dispute. Accordingly, considerations of comity do not require the District Court to refrain from enjoining the existing state court proceeding. It is abundantly clear that the litigants in this case, the interests of justice, and the courts, both state and federal, will best be served if all related claims are resolved in one forum.

## V.

The pro se appellants attack the breadth of the injunction in several respects, only one of which merits discussion. They challenge as being unduly restrictive that portion of the order that enjoins each defendant "[f]rom being an owner, shareholder, investor ... or employee of any corporation, partnership, association, entity, or enterprise of any kind or nature whatsoever which is party to an Agent Reporting Agreement with ARC, or which has submitted an application or request to become a party to an Agent Reporting Agreement with ARC, or which has submitted an application or request to become accredited or otherwise approved by ARC." Order at paragraph 2. The record does not disclose whether any organizations other than travel agencies are in fact affiliated through their business travel departments with ARC or whether they instead conduct their travel arrangements directly with the airlines, independent from ARC. If some cor-

porations and other organizations do indeed affiliate their business travel departments with ARC, the injunction would effectively bar defendants from employment in any capacity by such organizations as well as from any investment therein.[7] We do not believe that the District Court intended to punish defendants either by forcing them to quit jobs that do not place them in positions of access or trust with respect to airline tickets, blank ticket stock, and the like, or by substantially restricting their ability to invest in legitimate businesses other than travel agencies, and it obviously would not be permissible for the court to do so.

■ If organizations with business travel departments in fact, because of actual or pending affiliation with ARC, fall within the terms of the injunction, defendants should present evidence of this to the District Court and should request an appropriate modification of the injunction. Clearly, defendants should not be barred from employment or from investment opportunities merely because the employer or subject of investment has a travel department affiliated with ARC. On the present state of the record, however, it does not appear that as a practical matter the injunction is overbroad in this respect. The question is one that, if it is to be raised at all, should be raised in the District Court.

## VI.

Finally, we consider appellants' argument that in granting the preliminary injunction the District Court abused its discretion. In *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109 (8th Cir.1981) (en banc), this Court set forth the four factors a district court should consider in ruling on a motion for a preliminary injunction.

[W]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

*Id.* at 114. The District Court in this case weighed the *Dataphase* factors. It concluded that ARC had established a threat of irreparable injury. The court found "[t]his conclusion [to be] unavoidable given the complexity of the alleged scheme and the difficulty in determining which defendants if any hold fraudulently procured [airline] tickets." Order at 1. The court further concluded that defendants' interests would be protected by the security bond requirement contained in the replevin order. *Id.* at 1–2. Finally, the court found "that there is a good possibility that plaintiff will succeed on the merits," *id.* at 2, and that issuance of the preliminary injunction would be in the public interest because "it is in the public interest that schemes to defraud be discouraged." *Id.*

Appellants attack each of the District Court's conclusions regarding the *Dataphase* factors. We have examined their arguments at length and conclude that only one issue merits discussion. In attacking the preliminary injunction, Schroeder and Michaeloff note that ARC's complaint seeks monetary relief. They argue that there can be no irreparable harm where monetary relief will suffice as the ultimate remedy. ARC concedes that its complaint seeks damages, and that damages, if available, would constitute an adequate remedy. ARC contends, however, that in view of defendants' apparent lack of financial resources, their criminal backgrounds, and their tendency to use aliases, recovery of

---

**7.** In particular, appellant Corrine Barry argues that under the terms of this injunction she would be forced to give up her position with Northern States Power Company because the company has its own travel department. Assuming that her employment at the company does not place her in a position of trust with respect to the issuance of airline tickets, a fact not clear from the record, we believe that this would be an untenable result. However, since the record does not show that the company has (or is seeking) any affiliation with ARC, Barry has not established that her employment with the company is barred by the injunction.

even a portion of the $3 million sought is so unlikely that ARC's only true recourse is to recover the outstanding tickets.[8] It therefore sought the preliminary injunction, which is designed to preserve the tickets and protect ARC's remedy pending trial.

■ The authority of a trial court to issue a preliminary injunction to ensure the preservation of an adequate remedy is well established. *See Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290, 61 S.Ct. 229, 234, 85 L.Ed. 189 (1940) (preliminary injunction restraining transfer of funds by trustee was proper where there were allegations that defendant was insolvent); *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 52 (1st Cir.1986) ("injunctive relief restraining the transfer of assets can be granted when the district court finds that the defendant may be insolvent before a final judgment is entered"); *Roland Machinery Co. v. Dresser Industries*, 749 F.2d 380, 386 (7th Cir.1984) (preliminary injunction may be granted upon a showing that an award of damages will be inadequate because defendant may be insolvent by the end of trial); *Productos Carnic, S.A. v. Central American Beef and Seafood Trading Co.*, 621 F.2d 683, 686 (5th Cir. 1980) (preliminary injunctive relief is available to protect a damages remedy). We similarly hold that a preliminary injunction may issue to protect plaintiff's remedy in the circumstances of this case. In deciding whether the plaintiff has demonstrated sufficient evidence to support the claim that it will be unable to recover absent a preliminary injunction, the Seventh Circuit has concluded, and we agree, that "[t]he resolution of this issue depends on two factors—the [non-movant's] resources and the potential magnitude of eventual damages." *Signode Corp. v. Weld-Loc Systems, Inc.*, 700

F.2d 1108, 1111 (7th Cir.1983). In the present case, ARC has demonstrated a clear probability that defendants will not be able to satisfy an award of adequate damages. We therefore agree with the District Court that ARC is entitled to a preliminary injunction to protect its remedy.

Having carefully reviewed appellants' arguments in light of the factual material presented to the District Court, we conclude that the court properly applied the *Dataphase* factors, that it committed no clear error of fact or law that would affect its balancing of the equities, and that in issuing the preliminary injunction it did not abuse its discretion. As we stated in *Edudata Corp. v. Scientific Computers, Inc.*, 746 F.2d 429, 430 (8th Cir.1984) (per curiam), in reviewing entry of a preliminary injunction, "[n]ot only are the District Court's findings of fact binding on us unless clearly erroneous, [but] we may not disturb [the] court's balancing of the equities absent an abuse of discretion." *Id.* at 430. Applying that standard, we find no basis for overturning the preliminary injunction.

For the reasons stated above, the order of the District Court granting the preliminary injunction is AFFIRMED.

---

8. In support of this contention, ARC points out that several of the defendants, including all but two of the present appellants, are proceeding pro se, that two other defendants (not appellants in this action) qualified as indigent and were being provided free legal services by a local clinic, that each of the defendant travel agencies is defunct and seemingly without assets, and that at least one defendant, Frederick Kraemer, has filed for voluntary bankruptcy. While ARC offers no specific evidence of Michaeloff's and Schroeder's financial condition, from the known facts there is reason to believe that they would be unable to respond to a substantial award of damages.