# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

Nos. 08-1442/1443

_____

| | | |
|---|---|---|
| Arkansas Blue Cross and Blue Shield, A Mutual Insurance Company; USAble Corporation, | * * * * | |
| Appellants/ Cross-Appellees, | * * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Little Rock Cardiology Clinic, P.A.; Little Rock HMA, Inc., doing business as Southwest Regional Medical Center, | * * * * * | |
| Appellees/ Cross-Appellants. | * * | |

_____

Submitted: September 25, 2008
Filed: January 7, 2009

_____

Before WOLLMAN, SMITH and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Arkansas Blue Cross and Blue Shield ("Blue Cross") and its wholly-owned subsidiary, USAble Corporation ("USAble"), brought this action against Little Rock Cardiology Clinic, P.A., and Little Rock HMA, Inc. (jointly, "the health care providers"), seeking to enjoin a civil action between the parties pending in the Circuit Court of Pulaski County, Arkansas.[1] The district court[2] granted the health care providers' motion to dismiss for lack of subject matter jurisdiction. Blue Cross and USAble appeal, arguing that the district court's dismissal was improper in numerous respects. The health care providers filed a cross-appeal, arguing alternatively that the district court could have found in their favor on grounds of claim or issue preclusion. For the following reasons, we affirm the district court's dismissal for lack of jurisdiction.

I.    BACKGROUND

More than ten years ago, the Prudential Insurance Company of America and other health insurers obtained a judgment in the United States District Court for the Eastern District of Arkansas declaring that the Arkansas Patient Protection Act of 1995 ("the Arkansas PPA") was partially preempted by the Employee Retirement Income Security Act of 1974 ("ERISA").[3] *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 964 F. Supp. 1285, 1299-300 (E.D. Ark. 1997). In the same action, Prudential and its coplaintiffs obtained an injunction barring the enforcement of the Arkansas PPA against the types of employee benefit plans described in 29 U.S.C. § 1003(a). *Id.* On appeal, we held that the offending provisions of the Arkansas PPA

---

[1]A third health care provider, St. Vincent Infirmary Medical Center, was dismissed from this case shortly before we heard oral argument.

[2]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

[3]The State of Arkansas intervened to defend the constitutionality of the Arkansas PPA.

were not severable and that the statute was, therefore, preempted in its entirety. *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.* (*Prudential I*), 154 F.3d 812, 832 (8th Cir. 1998). The district court entered an amended order stating that "[the] Arkansas Patient Protection Act is preempted in its entirety and [the] defendants are enjoined from enforcing the Arkansas Patient Protection Act in its entirety." *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, No. 4:95-cv-00514-JMM (E.D. Ark. Oct. 5, 1998).

The so-called "*Prudential I* injunction" was undisturbed for nearly five years. On April 2, 2003, however, the United States Supreme Court handed down its decision in *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003). In *Miller*, the Court clarified its precedents concerning the scope of ERISA's "saving clause," which exempts from preemption "law[s] . . . which regulat[e] insurance." *Id.* at 334 (quoting 29 U.S.C. § 1144(b)(2)(A)). Applying its newly announced two-part test, the Court held that Kentucky's "any willing provider" statutes—which prohibited health insurers from discriminating against health care providers that were "willing" to meet the conditions for participation in an insurer's health benefit plan— were exempt from preemption under ERISA's saving clause. *Id.* at 341-42.

Although the Court did not refer to *Prudential I* or the Arkansas PPA, interested parties soon came forward to argue that the any willing provider provisions of the preempted Arkansas PPA were materially indistinguishable from the Kentucky statutes saved from preemption in *Miller*. Little Rock Cardiology Clinic and Little Rock HMA (under the name "Southwest Regional Medical Center") sent separate letters to Blue Cross requesting admittance to its provider network in light of the Supreme Court's decision in *Miller*. Blue Cross and USAble responded to the health care providers' requests by filing suit in the Eastern District of Arkansas (*Blue Cross I*). Blue Cross and USAble sought, among other things, a declaratory judgment stating that the *Prudential I* injunction remained valid after *Miller*. The health care providers counterclaimed, seeking admittance to Blue Cross and USAble's provider

-3-

networks as well as damages for Blue Cross and USAble's alleged violation of the any willing provider provisions of the Arkansas PPA.

Soon thereafter, the State of Arkansas and two of the original defendants in *Prudential I* filed a motion under Federal Rule of Civil Procedure 60(b)(5) to dissolve the *Prudential I* injunction based on the Supreme Court's decision in *Miller*. On February 12, 2004, the district court granted the motion and dissolved the *Prudential I* injunction in its entirety. *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, No. 4:95-cv-00514-JMM, 2004 WL 3550112, at *1-3 (E.D. Ark. Feb. 12, 2004). On appeal, we affirmed the court's dissolution of the *Prudential I* injunction, except as it related to self-funded ERISA plans and claims that could have been brought under 29 U.S.C. § 1132, ERISA's civil enforcement provision. *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.* (*Prudential II*), 413 F.3d 897, 914-15 (8th Cir. 2005). The district court entered an amended order stating that "this court does hereby lift the injunction against the Arkansas Patient Protection Act of 1995, except with regard to (1) direct or indirect application to self-funded ERISA plans and (2) the civil penalties provisions in Ark. Code Ann. § 23-99-207 as far as any cause of action that could have been brought under [29 U.S.C. § 1132]." *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, No. 4:95-cv-00514-JMM (E.D. Ark. Aug. 2, 2005).

Meanwhile, the district court had stayed *Blue Cross I* pending the outcome of *Prudential II*. Once the court lifted its stay, the parties filed cross-motions for judgment on the pleadings. On March 27, 2006, the district court dismissed with prejudice Blue Cross and USAble's declaratory judgment claim, finding that this court's decision in *Prudential II* "disposed of all or nearly all of the claims asserted in the complaint." *Ark. Blue Cross & Blue Shield v. St. Vincent Infirmary Med. Ctr.* (*Blue Cross I*), No. 4:03-cv-00662-JLH, 2006 WL 796949, at *1 (E.D. Ark. Mar. 27, 2006). Turning to the health care providers' counterclaims, the district court noted that the equitable relief the health care providers sought was no longer needed because Blue Cross and USAble admitted Little Rock Cardiology Clinic and Little Rock HMA

into their provider networks after *Prudential II*. *Id.* at *3. The court then declined to exercise supplemental jurisdiction over the health care providers' damages claims and dismissed them without prejudice, holding that the claims raised "novel or complex issues of Arkansas law . . . [and] involve[d] significant issues of Arkansas public policy." *Id.* at *4.

Less than one month later, the health care providers filed suit against Blue Cross and USAble in the Circuit Court of Pulaski County, Arkansas (*Blue Cross II*), again seeking damages for Blue Cross and USAble's alleged violation of the any willing provider provisions of the Arkansas PPA. While the parties disagree over how far *Blue Cross II* has progressed, by all accounts the litigation is ongoing.

Not willing merely to defend against the health care providers' claims in state court, Blue Cross and USAble brought this action in federal court (*Blue Cross III*), seeking to enjoin the health care providers from proceeding in *Blue Cross II*. *Ark. Blue Cross & Blue Shield v. St. Vincent Infirmary Med. Ctr.* (*Blue Cross III*), No. 4:07-cv-00813-JMM, 2007 WL 4287842, at *2 (E.D. Ark. Dec. 5, 2007). The health care providers moved to dismiss under Rules 12(b)(1) and 12(b)(6), arguing that the district court lacked subject matter jurisdiction or, alternatively, that the action was barred by claim and issue preclusion arising from the district court's dismissal with prejudice of Blue Cross and USAble's declaratory judgment claim in *Blue Cross I*. *Blue Cross III*, 2007 WL 4287842, at *2. The district court rejected the health care providers' preclusion arguments but granted their motion to dismiss for lack of jurisdiction. *Id.* at *3-5. Both parties appeal.

## II. DISCUSSION

It is a verity that federal courts are courts of limited jurisdiction. Parties may not enlarge that jurisdiction by waiver or consent. *4:20 Commc'ns, Inc. v. Paradigm Co.*, 336 F.3d 775, 778 (8th Cir. 2003). Likewise, a court may not assume

"hypothetical jurisdiction" to decide "contested questions of law when its jurisdiction is in doubt." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).

We review de novo the district court's grant of the health care providers' motion to dismiss for lack of subject matter jurisdiction. *Hastings v. Wilson*, 516 F.3d 1055, 1058 (8th Cir. 2008). The burden of establishing that a cause of action lies within the limited jurisdiction of the federal courts is on the party asserting jurisdiction: here, Blue Cross and USAble. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

From the outset, federal subject matter jurisdiction is plainly in doubt because Blue Cross and USAble have not shown any basis for federal question jurisdiction under 28 U.S.C. § 1331, or diversity jurisdiction under 28 U.S.C. § 1332. Ordinarily, that would end the inquiry. In this case, however, Blue Cross and USAble assert that the district court had ancillary jurisdiction to enforce the injunction that it entered more than a decade ago in *Prudential I*. Alternatively, Blue Cross and USAble assert that the district court's "inherent power" under the All Writs Act, 28 U.S.C. § 1651, was "sufficient to establish jurisdiction" over this action. We disagree with both assertions.

To decide the jurisdictional question we must disentangle two distinct issues: first, whether the district court had ancillary jurisdiction to enforce the original terms of the injunction that it entered in *Prudential I*; and second, whether the All Writs Act supplied the district court with an independent source of subject matter jurisdiction.

Ancillary jurisdiction is not a wellspring of new jurisdiction. Ancillary jurisdiction is instead derived from some preexisting source of jurisdiction. As the Supreme Court has described it, "the doctrine of ancillary jurisdiction . . . recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Kokkonen*, 511 U.S. at 378.

Specifically, the Court has acknowledged two purposes for which a federal court may exercise ancillary jurisdiction: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379-80 (internal citations omitted).

Blue Cross and USAble invoke only the second "head" of ancillary jurisdiction, sometimes called "ancillary enforcement jurisdiction," *see Myers v. Richland County*, 429 F.3d 740, 746 (8th Cir. 2005). The Supreme Court has approved the exercise of ancillary enforcement jurisdiction "over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances." *Peacock v. Thomas*, 516 U.S. 349, 356 (1996). At the same time, the Court has cautioned against exercising ancillary enforcement jurisdiction "over proceedings that are 'entirely new and original.'" *Id.* at 358 (quoting *Krippendorf v. Hyde*, 110 U.S. 276, 285 (1884)).

We accept, as a general proposition, that a federal court may exercise ancillary enforcement jurisdiction to prevent a state court action from contravening a decree that the federal court has previously issued. *See, e.g.*, *Berman v. Denver Tramway Corp.*, 197 F.2d 946, 950 (10th Cir. 1952) ("A federal court . . . has jurisdiction through means of a supplemental proceeding to enjoin the relitigation in a state court of a matter litigated, determined, and adjudicated by its valid decree regularly entered, if the result of the relitigation would be to destroy the effect of the decree rendered in the United States Court."); *see generally* 13 Charles Alan Wright et al., *Federal Practice and Procedure* § 3523 (2d ed. 1984 & Supp. 2008); *id.* § 3523.2 (West 2008). The dispositive question here is whether there is an extant decree for the district court to effectuate, protect or enforce.

Blue Cross and USAble argued before the district court that it had ancillary enforcement jurisdiction to prevent the health care providers from contravening the *Prudential I* injunction in *Blue Cross II*. The district court's analysis of Blue Cross and USAble's asserted basis of jurisdiction turned on its interpretation of the Anti-Injunction Act, 28 U.S.C. § 2283, which provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." According to Blue Cross and USAble, this action fell within the last of the enumerated exceptions to the Anti-Injunction Act, commonly known as the "relitigation exception," because the court in *Prudential I* determined that health insurers could not be held liable under the Arkansas PPA for excluding health care providers from their networks. The district court held that the relitigation exception did not apply because the court had not decided "the instant issue" in *Prudential I* or, for that matter, in Blue Cross and USAble's abortive declaratory judgment action, *Blue Cross I*. *See Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 148 (1988) ("[A]n essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court."). Therefore, the court granted the health care providers' motion to dismiss for lack of subject matter jurisdiction.

Before considering Blue Cross and USAble's argument on appeal, we must first decide whether the district court's approach is inconsistent with our holding in *Airlines Reporting Corp. v. Barry*, 825 F.2d 1220 (8th Cir. 1987), that "[t]he Anti-Injunction Act is not jurisdictional," *id.* at 1225 (citing *Smith v. Apple*, 264 U.S. 274, 278-79 (1924)). Where it applies, the Anti-Injunction Act does not withdraw subject matter jurisdiction from the federal courts. Rather, as its name suggests, the Anti-Injunction Act merely restricts federal courts' authority to issue a particular type of equitable relief. *Gloucester Marine Rys. Corp. v. Charles Parisi, Inc.*, 848 F.2d 12, 15 (1st Cir. 1988); *Mooney Aircraft Corp. v. Foster* (*In re Mooney Aircraft, Inc.*), 730

F.2d 367, 372-73 (5th Cir. 1984). Since a court need not consider the limits of its remedial authority unless it has jurisdiction to reach the merits of an action, it is generally inappropriate to apply the Anti-Injunction Act before resolving all jurisdictional questions.[4]

We find that the district court did not treat the Anti-Injunction Act as a jurisdictional statute. Instead, the court used the relitigation exception to the Anti-Injunction Act as the touchstone for its analysis of Blue Cross and USAble's asserted basis of ancillary enforcement jurisdiction. This was not necessarily improper, insofar as the standard governing the application of the relitigation exception is similar, and perhaps functionally equivalent, to the standard governing the exercise of ancillary enforcement jurisdiction to prevent the contravention of a federal decree. Nonetheless, we are concerned that the district court's approach increases the risk of confusion in future cases where the governing standards do not overlap.[5] Accordingly, we limit our analysis to the doctrine of ancillary enforcement jurisdiction.

---

[4]Once a court decides that it has subject matter jurisdiction over an action seeking to enjoin ongoing state court proceedings, it must then determine whether the Anti-Injunction Act nevertheless prohibits the issuance of injunctive relief.

[5]For example, the doctrine of ancillary enforcement jurisdiction is, in one sense, narrower than the relitigation exception, for the relitigation exception also applies to actions in which there is an independent source of federal subject matter jurisdiction that is unrelated to a previously issued federal decree. In such actions, ancillary jurisdiction is not germane to the question whether the federal court is authorized to issue injunctive relief, *see Chick Kam Choo*, 486 U.S. at 146-48, and if so, whether such relief is otherwise appropriate, *see id.* at 151. In another sense, the doctrine of ancillary enforcement jurisdiction is broader than the relitigation exception, for it permits courts to hear "a broad range of supplementary proceedings," *Peacock*, 516 U.S. at 356, which includes but is not limited to proceedings seeking to prevent the contravention of a federal decree, *see Kokkonen*, 511 U.S. at 379-80. Thus, the relitigation exception is simply not relevant in many supplementary proceedings in which courts are called upon to exercise ancillary jurisdiction.

Here again, the crux of Blue Cross and USAble's argument is that the district court had ancillary enforcement jurisdiction to prevent the health care providers from contravening the *Prudential I* injunction in *Blue Cross II*.[6] Although Blue Cross and USAble concede that the *Prudential I* injunction has been partially dissolved and that neither of its two remaining provisions applies to this case, they contend that the *Prudential I* injunction was not nullified, *ab initio*, because relief under Rule 60(b)(5) is "inherently prospective." Blue Cross and USAble reason that the *Prudential I* injunction must, therefore, remain enforceable as to all actions taken between January 31, 1997, when the injunction was first entered, and August 2, 2005, when the pertinent provisions of the injunction were dissolved. Carrying this syllogism to its logical conclusion, Blue Cross and USAble argue that the district court should have exercised ancillary jurisdiction over this action to enjoin *Blue Cross II*, in which the health care providers seek to thwart the original terms of the *Prudential I* injunction by obtaining damages for Blue Cross and USAble's alleged violation of the any willing provider provisions of the Arkansas PPA during the pre-dissolution period.

Blue Cross and USAble's argument rests on an untenable premise: namely, that *Prudential I* decided, once and for all, the availability of damages for violations of the any willing provider provisions of the Arkansas PPA that occurred between January 31, 1997, and August 2, 2005. Even assuming that the original terms of the *Prudential I* injunction were broad enough to preclude any action for damages under the Arkansas PPA, the rationale for the *Prudential I* injunction was discredited by the Supreme Court's decision in *Miller*, and the injunction's pertinent provisions were

---

[6]Blue Cross and USAble argue that the health care providers were subject to the *Prudential I* injunction, even though they were not defendants in *Prudential I*, because the State of Arkansas represented the health care providers' interests as an intervenor. The health care providers maintain that the *Prudential I* injunction bound only the Prudential Insurance Company of America and the other named defendants. While we express no opinion about the merits of this dispute, we will assume that the health care providers were bound by the *Prudential I* injunction, or at least the accompanying declaration that the Arkansas PPA was preempted in its entirety.

dissolved in accordance with this court's decision in *Prudential II*. Simply put, there is nothing left of the *Prudential I* injunction to prevent the health care providers from litigating their action for damages in *Blue Cross II*.

Blue Cross and USAble attempt to overcome this inconvenient fact by focusing on the period from January 31, 1997, to August 2, 2005, when the *Prudential I* injunction was still in force. If the health care providers could not have prevailed in an action for damages under the Arkansas PPA before August 2, 2005, so the argument goes, then they cannot prevail in *Blue Cross II*, which seeks damages for conduct occurring between January 31, 1997, and August 2, 2005. The central flaw in this line of reasoning is that it fails to account for the later developments in *Miller* and *Prudential II*. The district court that issued the *Prudential I* injunction did not contemplate the hypothetical availability of damages if the injunction was eventually dissolved; indeed, such an attempt to anticipate *Miller* and *Prudential II* so as to foreclose future cases along the lines of *Blue Cross II* would have veered perilously close to an advisory opinion. Since then, no federal court has decided whether, in light of *Miller* and *Prudential II*, health insurers such as Blue Cross and USAble may be held liable under the Arkansas PPA for excluding "willing" health care providers from their networks between January 31, 1997, and August 2, 2005. In the absence of an extant federal decree to effectuate, protect or enforce, we see no viable basis for ancillary enforcement jurisdiction in this case.[7]

We are not moved by Blue Cross and USAble's contention that the district court's refusal to enforce the original terms of the *Prudential I* injunction, as it existed before *Miller* and *Prudential II*, gave the court's partial dissolution of the *Prudential I* injunction an impermissible retroactive effect. Blue Cross and USAble offer no

---

[7]We note, however, that Blue Cross and USAble may raise all available defenses before the state court in *Blue Cross II*, *see Rivet v. Regions Bank of La.*, 522 U.S. 470, 478 (1998), which we presume is "competent to resolve federal issues," *Chick Kam Choo*, 486 U.S. at 150.

concrete authority for this proposition apart from their idiosyncratic interpretation of Rule 60(b)(5), which authorizes courts to "relieve" a party from its obligations under a "final judgment" in cases where "applying [the judgment] prospectively is no longer equitable." The term "prospectively," as it is used in Rule 60(b)(5), limits the types of judgments from which courts may provide relief. For example, since money judgments do not apply prospectively, we have held that "relief from a final money judgment is . . . not available under the equitable leg of Rule 60(b)(5)." *Stokors S.A. v. Morrison*, 147 F.3d 759, 762 (8th Cir. 1998). Injunctions, by contrast, are "executory," and therefore eligible for relief under Rule 60(b)(5), because they characteristically require "the supervision of changing conduct or conditions." *Id.* (quoting *Maraziti v. Thorpe*, 52 F.3d 252, 254 (9th Cir. 1995)). We are not aware of any case in which this court has held that an injunction dissolved "prospectively" under Rule 60(b)(5) because of an intervening Supreme Court decision can be invoked to prohibit a party from filing a lawsuit whose subject matter relates to the injunction's former provisions. In a related context we reached nearly the opposite conclusion, holding that a district court's dissolution of a permanent injunction under Rule 59(e) would allow formerly enjoined litigation to proceed. *Twin City Constr. Co. of Fargo v. Turtle Mountain Band of Chippewa Indians*, 911 F.2d 137, 139-40 (8th Cir. 1990).

Because the district court could not effectuate, protect or enforce the dissolved provisions of the *Prudential I* injunction, Blue Cross and USAble have failed to establish ancillary enforcement jurisdiction.[8]

---

[8]Our decision in *Jenkins v. Kansas City Missouri School District*, 516 F.3d 1074 (8th Cir. 2008), is not to the contrary. There, we affirmed a district court's exercise of ancillary jurisdiction to enforce its previous orders relating to the desegregation of the Kansas City, Missouri school district. *Id.* at 1080-81. Unlike the *Prudential I* injunction, the orders supporting ancillary jurisdiction in *Jenkins* had not been called into question by a decision of the Supreme Court or dissolved under Rule 60(b)(5). As a result, we have no difficulty concluding that *Jenkins* is both factually and legally distinguishable from this case.

-12-

Blue Cross and USAble's reliance on the All Writs Act as an independent source of subject matter jurisdiction is equally misplaced. The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Supreme Court has held that the All Writs Act authorizes federal courts to issue extraordinary writs, but only to the extent that "the issuance of process [is] 'in aid of' the issuing court's jurisdiction." *Clinton v. Goldsmith*, 526 U.S. 529, 534 (1999) (quoting 28 U.S.C. § 1651(a)). Put differently, while the All Writs Act empowers federal courts to wield certain "procedural tools," such as the "various historic common-law writs," *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 187 (1977) (Stevens, J., dissenting in part), it is not an independent source of subject matter jurisdiction, *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 33 (2002) (citing *Goldsmith*, 526 U.S. at 534-35); *Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft*, 491 F.3d 355, 364 (8th Cir. 2007), *cert. denied sub nom. Goss Int'l Corp. v. Tokyo Kikai Seisakusho*, --- U.S. ---, 128 S. Ct. 2957 (2008). Thus, the All Writs Act could not have supplied the district court with jurisdiction over this action.

Our decision in *Canady v. Allstate Insurance Co.*, 282 F.3d 1005 (8th Cir. 2002), does not compel us to reach a different conclusion. In *Canady*, the district court exercised removal jurisdiction over two state court actions based on its finding that the plaintiffs were attempting to circumvent the district court's denial of class certification and dismissal without prejudice in a previous case involving many of the same parties. *Id.* at 1011-12. Relying on the All Writs Act, the court dismissed the state court actions and permanently enjoined the would-be class-action plaintiffs from bringing any future action in state or federal court that raised the same claims against multiple defendants unrelated to one another. *Id.* at 1012. We affirmed the district court's refusal to remand the state court actions, holding that "[a]s long as the original lawsuit was properly brought in federal court, the federal court retains subject matter jurisdiction to remove any subsequent state law action to federal court for purposes

-13-

of applying the All Writs Act." *Id.* at 1013 (citing *Xiong v. Minnesota*, 195 F.3d 424, 426-27 (8th Cir. 1999)). On the merits, we affirmed the district court's grant of injunctive relief under the All Writs Act, holding that it satisfied the relitigation exception to the Anti-Injunction Act. *Id.* at 1013-20.

Compared to *Canady*, this case presents a different set of facts and an even more convoluted procedural history. Yet much of *Canady*'s analysis involves legal principles that might be applied to cases, like this one, involving dissimilar circumstances. In particular, *Canady* seems to declare that the All Writs Act is either a source of or substitute for subject matter jurisdiction. *See id.* at 1013[9] & n.6,[10] 1016-17.[11] We are not bound to follow this expansive interpretation of the All Writs Act, because it is inconsistent with an intervening decision of the Supreme Court. *See T.L. ex rel. Ingram v. United States*, 443 F.3d 956, 960 (8th Cir. 2006) ("[I]t is well settled that a panel may depart from circuit precedent based on an intervening opinion of the Supreme Court that undermines the prior precedent.").

---

[9]"As long as the original lawsuit was properly brought in federal court, the federal court retains subject matter jurisdiction to remove any subsequent state law action to federal court for purposes of applying the All Writs Act." (Citing *Xiong*, 195 F.3d at 426-27.)

[10]"For jurisdictional purposes, the Eighth Circuit requires that the injunction at issue must seek to protect a judgment properly obtained in federal court, but does not require an independent basis for federal subject matter jurisdiction when the All Writs Act is so invoked." (Citing *Xiong*, 195 F.3d 424; *NAACP v. Metro. Council* (*NAACP II*), 144 F.3d 1168 (8th Cir. 1998).)

[11]"[B]ecause federal subject matter jurisdiction attaches pursuant to the All Writs Act, procedural matters in this case, as well as any future case impacting the [district court's] prior judgment . . . are governed by the Federal Rules of Civil Procedure."

The Supreme Court decided *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28 (2002), less than one year after we decided *Canady*. Citing our decision in *Xiong*, the Court reported that we were one of at least three circuits "[to] have held that the All Writs Act gives a federal court the authority to remove a state-court case in order to prevent the frustration of orders the federal court has previously issued." *Syngenta*, 537 U.S. at 31. The Court rejected the argument that the All Writs Act empowers federal courts to depart from the specific requirements of the federal removal statute, 28 U.S.C. § 1441, including the requirement that the party seeking removal establish federal subject matter jurisdiction. *Syngenta*, 537 U.S. at 32-33. The Court held that "[b]ecause the All Writs Act does not confer jurisdiction on the federal courts, it cannot confer the original jurisdiction required to support removal pursuant to § 1441." *Id.* at 33.

The Court's holding in *Syngenta* rejected *Canady*'s interpretation of the All Writs Act as either a source of or substitute for federal subject matter jurisdiction and effectively overruled *Xiong*, which was the foundation for significant portions of *Canady*'s analysis. Consequently, *Syngenta* undermined *Canady*'s status as a binding precedent. Because this case does not involve the removal of a state court action and because the parties have not meaningfully addressed the issue, we do not decide how much, if any, of *Canady*'s analysis survived *Syngenta*. For present purposes, it is enough to reiterate that *Canady* does not control the outcome in this case.

Since the All Writs Act is neither a source of nor substitute for federal subject matter jurisdiction, we return to the three potential bases of jurisdiction introduced above: federal question jurisdiction under 28 U.S.C. § 1331, diversity jurisdiction under 28 U.S.C. § 1332, and ancillary enforcement jurisdiction to effectuate, protect or enforce the *Prudential I* injunction. We conclude that Blue Cross and USAble have

-15-

failed to meet their burden of establishing that any one of those bases of jurisdiction applies in this action.[12]

## III.    CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal for lack of jurisdiction.

_____

---

[12]Accordingly, we may not reach the merits of the health care providers' cross-appeal.