# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 11-2749

———————

| | | |
|---|---|---|
| M.A. Mortenson Company,<br>a Minnesota corporation, | * <br> * <br> * | |
| Plaintiff/Appellee, | * | |
| v. | * <br> * <br> * | Appeal from the United States<br>District Court for the<br>District of Minnesota. |
| Saunders Concrete Company, Inc.,<br>a New York corporation, | * <br> * <br> * | |
| Defendant/Appellant, | * <br> * | |
| Hartford Fire Insurance Company,<br>a Connecticut corporation, | * <br> * <br> * | |
| Defendant. | * | |

———————

Submitted: March 13, 2012
Filed: April 30, 2012

———————

Before MURPHY and GRUENDER, Circuit Judges, and ROSS,[1] District Judge.

———————

MURPHY, Circuit Judge.

---

[1] The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri, sitting by designation.

M.A. Mortenson Company brought this action to compel arbitration with Saunders Concrete Company, Inc. concerning a dispute arising out of a wind turbine project. The district court[2] granted the motion to compel, and Saunders appeals. We affirm.

Mortenson was the general contractor on a wind turbine project in Herkimer County, New York. It hired Saunders, a ready mix concrete company, as a subcontractor to supply concrete for the project, and the two parties entered into a subcontract agreement. Saunders' performance under the subcontract was guaranteed by a performance bond provided by Hartford Fire Insurance Company. According to Mortenson, test results revealed in the fall of 2010 that the concrete Saunders had supplied was defective, causing Mortenson to incur over $4.5 million in repair costs. Mortenson declared Saunders to be in default of the subcontract and called upon Hartford to perform under its performance bond. Hartford did not reimburse Mortenson.

This appeal concerns Article 21 of the subcontract, entitled "Disputes," which contains four separate paragraphs designated as sections 21.1 through 21.4. Each paragraph describes how a particular type of dispute should be handled. Section 21.1 provides that if arbitration is provided for in the "Contract Documents," Mortenson "in its sole discretion" may demand arbitration of any dispute under the subcontract. The third paragraph, § 21.3, directs that if the "Contract Documents provide administrative procedures for resolution of disputes," the subcontractor will comply with those procedures and refrain from "legal or other proceedings" against Mortenson until the administrative procedures have been exhausted.

---

[2]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

Section 21.2, the second paragraph, is the significant one for this case. It directs that "if Mortenson, in its sole discretion, elects to demand arbitration with Subcontractor," then "any dispute arising between Mortenson and Subcontractor under the Agreement . . . shall be decided by arbitration in accordance with [the rules of the American Arbitration Association]" and proceedings "shall be held in Minneapolis, Minnesota." Section 21.2 applies where, as here, "the Contract Documents do not provide for arbitration."

The fourth paragraph, § 21.4, governs situations where the subcontractor asserts claims against the owner or architect. It provides that "Subcontractor agrees not to institute (and to stay) legal or other remedies against Mortenson until all legal proceedings against Owner with respect to such claim are final and complete." Further, the subcontractor's right of recovery arising from the owner or architect's conduct is limited to what is "recovered from Owner and Mortenson shall not be liable to Subcontractor for any monies or other relief except those paid to Mortenson by Owner for the benefit of Subcontractor." Section 21.4 concludes, "Subcontractor . . . agrees to make no claim to further payment beyond the Subcontract Price arising out of the acts, errors, or omissions of Owner or Architect, . . . other than to the extent that Mortenson may receive funds from Owner on behalf of Subcontractor. . . ."

On March 31, 2011, Mortenson filed a demand for arbitration with the American Arbitration Association (AAA), naming subcontractor Saunders and Hartford as respondents and asserting claims of negligence and breach of contract. Mortenson's demand stated that the subcontract contained an arbitration agreement "which provides for arbitration under the Arbitration Rules of the [AAA]." Saunders did not respond to the demand but instead filed suit in New York state court, alleging various claims against Mortenson and three other defendants. It also moved for a stay of arbitration.

Before the New York court ruled on Saunders' stay motion, Mortenson brought this action in the federal district court in Minnesota, seeking an order compelling arbitration under § 4 of the Federal Arbitration Act (FAA). After the New York court ordered the arbitration proceedings to be temporarily stayed, Mortenson removed the state court case to federal court in the Northern District of New York. That court denied Saunders' motion to stay the arbitration proceedings and issued a stay in the case brought by Saunders, noting that its claims were likely to be resolved "in connection with the proceedings in the District of Minnesota or in arbitration."

In its arguments opposing Mortenson's motion pending in the District of Minnesota to compel arbitration, Saunders contended that § 21.4 of the subcontract contained a "pay-if-paid" provision which violated New York lien law, see N.Y. Lien Law § 34, and that therefore the entire Disputes article was unenforceable. It also argued that the arbitration agreement was unconscionable.

The Minnesota district court granted Mortenson's motion to compel arbitration with Saunders.[3] It determined that it did not need to resolve the issue of whether § 21.4 violates New York law. That was because § 21.2, the arbitration provision Mortenson sought to enforce, was a "separate provision containing a specific agreement to arbitrate." The court also concluded that the arbitration agreement was not unconscionable. Saunders appeals. On its appeal it renews its arguments that the entire Disputes article in the subcontract, §§ 21.1–21.4, is one unified agreement to arbitrate, that § 21.4 contains a "pay-if-paid" provision which violates New York law, that Article 21 is therefore unenforceable, and that the arbitration agreement is unconscionable.

---

[3]The motion to compel arbitration with Hartford was denied by the district court; that order has not been appealed.

We review de novo a district court's grant of a motion to compel arbitration under § 4 of the FAA. 3M Co. v. Amtex Sec., Inc., 542 F.3d 1193, 1198 (8th Cir. 2008). The FAA "establishes a liberal federal policy favoring arbitration agreements." Lenz v. Yellow Transp., Inc., 431 F.3d 348, 351 (8th Cir. 2005) (citation omitted). A motion to compel arbitration must be granted "if a valid arbitration clause exists which encompasses the dispute between the parties." 542 F.3d at 1198; see 9 U.S.C. §§ 2, 4. Saunders does not contest that the arbitration clause would encompass the dispute. Instead, it argues that the arbitration agreement is void under New York law. We look to state contract law to determine "whether an enforceable arbitration agreement exists," Donaldson Co., Inc. v. Burroughs Diesel, Inc., 581 F.3d 726, 731 (8th Cir. 2009), and the parties agree that New York law governs the interpretation of the subcontract.

The district court relied on the Supreme Court's decision in Rent-A-Center, West, Inc. v. Jackson, 130 S. Ct. 2772, 2778 (2010), to resolve the dispute. It determined that Saunders' reliance on § 21.4 was irrelevant to its decision. That was because § 21.2 of the subcontract was a "separate provision containing a specific agreement to arbitrate" and was thus severable from the other sections. Saunders argues that the four paragraphs of the Disputes article function together as the "specific agreement to arbitrate" and that § 21.2 cannot be severed since it is merely one clause in an integrated arbitration agreement. It contends that § 21.4 is invalid under New York law, making the entire Article 21 unenforceable.

In Rent-A-Center, the Supreme Court held that a court must enforce a "specific agreement to arbitrate" despite a litigant's challenges to the contract as a whole or to another provision of the contract. 130 S. Ct. at 2778. The Court refused to consider the plaintiff's challenge to the agreement as a whole, holding that "[a]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." Id. (citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445 (2006)). Thus, a challenging party in arbitration disputes must attack

-5-

the validity of the specific arbitration provision sought to be enforced. 130 S. Ct. at 2778–79.

We conclude that § 21.2 of the subcontract between Mortenson and Saunders is a separate provision containing a specific agreement to arbitrate. We therefore need not consider Saunders' attack on the legality of § 21.4. See Rent-A-Center, 130 S. Ct. at 2778. Each of the four paragraphs in the Disputes article governs a different type of dispute. Only § 21.1 and § 21.2 mention arbitration, but they cannot be part of one "specific agreement to arbitrate" since they are mutually exclusive. Only § 21.2 applies to the current dispute which is one where the contract documents do not provide for arbitration. Arbitration is therefore governed by the AAA rules. In contrast, § 21.1 applies in a situation where the contract documents themselves call for arbitration. The third paragraph, § 21.3, is not an arbitration clause. Instead, § 21.3 governs situations in which the contract documents call for administrative procedures for dispute resolution, a situation not applicable in this case. Nor does § 21.4 make any mention of arbitration. Section 21.4 details how a subcontractor can pursue claims against the owner as opposed to claims against a contractor.

The cases cited by Saunders, which treated multiple paragraphs as a single agreement to arbitrate, are factually distinct. Unlike cases involving one multi paragraph arbitration provision outlining a unified arbitration process, e.g., Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d 996, 1006 (9th Cir. 2010), the separate paragraphs in the Disputes article in the subcontract here detail distinct and in part mutually exclusive processes for resolving different types of disputes.

Since § 21.2 is the specific agreement to arbitrate which Mortenson sought to enforce in this case, only challenges to the validity of that provision could render the arbitration agreement unenforceable. Rent-A-Center, 130 S. Ct. at 2779. The district court thus correctly concluded that Saunders' challenge to § 21.4 based on New York

lien law is irrelevant.  Any challenge to the validity of the contract as a whole "should . . . be considered by an arbitrator, not a court."  <u>Buckeye</u>, 546 U.S. at 446.

The only remaining issue is Saunders' argument that the arbitration agreement is unconscionable.  Saunders argues that the agreement is procedurally unconscionable because it had no ability to negotiate it, and further that the provision is substantively unconscionable because it gives Mortenson "sole discretion" to choose whether to arbitrate and unduly burdens Saunders by requiring it to travel to Minnesota to arbitrate.

We conclude that § 21.2 is not unconscionable.  The mere fact that a party had no opportunity to negotiate a form contract is "not sufficient under New York law to render the provision procedurally unconscionable."  <u>Nayal v. HIP Network Servs. IPA, Inc.</u>, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009).  Courts have similarly rejected Saunders' argument that an arbitration agreement is substantively unconscionable because it gives one party the sole discretion to choose arbitration, <u>see</u> <u>Sablosky v. Gordon Co.</u>, 73 N.Y.2d 133, 138–39 (N.Y. 1989), and Saunders offers no authority indicating that a forum selection clause agreed to by two sophisticated business entities could be substantively unconscionable.

Accordingly, we affirm the order of the district court.

_____