# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3691
_____

Mark Donelson, individually and on behalf of all others similarly situated

*Plaintiff - Appellee*

v.

Ameriprise Financial Services, Inc.

*Defendant - Appellant*

Mark J. Sachse

*Defendant*

James Cracchiolo; Kelli Hunter Petruzillo; Neal Maglaque; Patrick Hugh
O'Connell

*Defendants - Appellants*

_____

No. 19-3693
_____

Mark Donelson, individually and on behalf of all others similarly situated

*Plaintiff - Appellee*

v.

Ameriprise Financial Services, Inc.

*Defendant*

Mark J. Sachse

*Defendant - Appellant*

James Cracchiolo; Kelli Hunter Petruzillo; Neal Maglaque; Patrick Hugh O'Connell

*Defendant*s
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: January 13, 2021
Filed: June 3, 2021
_____

Before GRUENDER, BENTON, and STRAS, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Plaintiff Mark Donelson filed suit against Defendants Mark Sachse, Ameriprise Financial Services, Inc., and individual Ameriprise officers (collectively "Defendants"), alleging violations of federal securities law. He also sought to represent other Sachse and Ameriprise clients in a class action. Defendants moved to strike Donelson's class-action allegations and to compel arbitration. The district court denied these motions. Defendants appeal. We reverse and remand for entry of an order striking Donelson's class-action allegations and compelling arbitration.

**I.**

According to his first amended complaint,[1] Donelson is a high school graduate with no training in trading securities. Donelson had an investment account with Robert W. Baird & Co. in 2008. In 2008, Sachse, who worked for Baird, contacted Donelson and told him that Sachse had heard that Donelson was adept at trading options. Sachse told Donelson that he was a former attorney who had stopped practicing law because he no longer enjoyed it. Unbeknownst to Donelson, Sachse had been disbarred by the Kansas Supreme Court in 2007 after multiple former clients filed ethics complaints.

In 2010, Sachse stopped working at Baird and became a broker and investment advisor at Ameriprise. At Sachse's invitation, Donelson then moved his investment account from Baird to Ameriprise. In the process of doing so, Donelson and Sachse met at a restaurant so that Donelson could sign the papers needed to open his new Ameriprise account. At the restaurant, Sachse had a copy of the Account Application, which he filled out himself, checking each box that, according to him, required checking. Donelson instructed Sachse that under no circumstances was he to trade on margin any securities in or for the account. Nevertheless, Sachse checked a box in the Account Application that authorized margin borrowing. Sachse told Donelson he checked the box as a formality and assured Donelson that he would not trade any securities on margin. Donelson signed the Account Application as Sachse instructed, without reading it.

The Account Application included a recitation that stated:

> You acknowledge that you have received and read the Agreement and agree to abide by the terms and conditions as currently in effect or as they may be amended from time to time. You hereby consent to all these terms and conditions with full knowledge and understanding of the information contained in the Agreement. This account is governed by a predispute arbitration clause which is found in Section 26, Page 3

---

[1]For the purposes of this opinion, we accept Donelson's allegations as true.

of the Agreement. You acknowledge receipt of the predispute arbitration clause.

The Account Application defined "Agreement" as "the Ameriprise Brokerage Client Agreement for Non-Qualified Accounts" ("Client Agreement"), which included an arbitration clause. That arbitration clause provided for arbitration of "ALL CONTROVERSIES THAT MAY ARISE BETWEEN US . . . , WHETHER ARISING BEFORE, ON OR AFTER THE DATE THIS ACCOUNT IS OPENED," except for "PUTATIVE OR CERTIFIED CLASS ACTION[S]."

After Donelson signed the Account Application, Sachse badly mishandled Donelson's investment account by, among other things, misrepresenting the account value, trading on margin when expressly instructed not to, and misrepresenting reparations Ameriprise would make for problems with Donelson's account. In response, Donelson filed suit against Defendants, bringing three counts against them. In Count I, Donelson asserted violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and related Securities and Exchange Commission Rules 10b-5(a) and (c), *see* 17 C.F.R. § 240.10b-5. In Count II, he asserted violations of § 20(a) of the Securities Exchange Act. *See* 15 U.S.C. § 78t(a). And in Count III, he asserted breach of fiduciary duty under § 206 of the Investment Advisors Act. *See* 15 U.S.C. § 80b-6. Alleging that other Sachse clients experienced similar improprieties, Donelson sought to represent them in a class action.

Defendants moved to strike Donelson's class-action allegations and to compel arbitration. The district court denied these motions. Defendants appeal, challenging the district court's denials. In Section II, we consider whether we have jurisdiction. In Section III, we determine whether Defendants waived their right to arbitrate. In Section IV, we address whether the district court or the arbitrator should have decided arbitrability. And in Section V, we address whether a valid arbitration clause exists and whether it encompasses the dispute between the parties. Ultimately, we reverse the district court's denial of Defendants' motions to strike

the class-action allegations and to compel arbitration, and we remand for entry of an order striking the class-action allegations and compelling arbitration.

## II.

First, we address Donelson's arguments that either we do not have jurisdiction to hear this appeal or, alternatively, at a minimum, we lack jurisdiction over the denial of the motions to strike the class-action allegations. *See, e.g.*, *Anderson ex rel. Anderson v. City of Minneapolis*, 934 F.3d 876, 880 (8th Cir. 2019) ("Before reaching the merits of the dispute, we begin with jurisdiction, which is always our first and fundamental question." (brackets and internal quotation marks omitted)). Neither argument has merit.

First, the Federal Arbitration Act ("FAA") gives us jurisdiction to review the denial of the motions to compel arbitration. Section 16 of the FAA provides that "[a]n appeal may be taken from . . . an order . . . denying a petition under section 4 of [the FAA] to order arbitration to proceed." 9 U.S.C. § 16(a)(1)(B). Here, Defendants invoked § 4 of the FAA in their motions to strike the class-action allegations and to compel arbitration. *See id*. § 4 (permitting a "party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration" to "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement"). The district court denied these petitions in its order denying Defendants' motions to strike and to compel arbitration. Therefore, we have jurisdiction to hear an appeal of this denial.

Donelson claims that the district court's order denying Defendants' motions to strike class-action allegations and to compel arbitration was not an order denying a petition under § 4 because the district court did not hold the trial required by that section. Section 4 states: "If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." However, the fact that the

district court did not hold a trial does not mean that the district court did not deny a petition under § 4 and does not preclude appellate jurisdiction.

Donelson also argues that even if we have jurisdiction to review the district court's denial of the motions to compel arbitration, we do not have jurisdiction to review the district court's denial of the motions to strike the class-action allegations. We disagree. Under § 4, which permits an appeal to be taken from an "order," we have jurisdiction to review the entire order. *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996) (holding that 28 U.S.C. § 1292(b)'s grant of appellate jurisdiction over certain interlocutory orders permitted the appellate court to review "any issue fairly included within the certified order because it is the *order* that is appealable" (internal quotation marks omitted)). Here, § 16 of the FAA provides for the appeal of "order[s]." 9 U.S.C. § 16(a)(1). Thus, we have appellate jurisdiction to review the district court's denial of Defendants' motions to strike class-action allegations because this denial was contained in an order reviewable under 9 U.S.C. § 16(a)(1)(B).

## III.

Next, we consider Donelson's claim that Defendants waived their right to arbitrate by moving to strike his class-action allegations at the same time they moved to compel arbitration. "The issue of waiver of arbitration is one of law and subject to *de novo* review." *Dumont v. Saskatchewan Gov't Ins.*, 258 F.3d 880, 886 (8th Cir. 2001). "A party may be found to have waived its right to arbitration if it: (1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts." *Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085, 1090 (8th Cir. 2007) (internal quotation marks omitted). But "[i]n light of the strong federal policy in favor of arbitration, any doubts concerning waiver of arbitrability should be resolved in favor of arbitration." *Id.* Here, there is no dispute that Defendants knew of an existing right to arbitration. Therefore, we consider whether Defendants acted inconsistently with their right to arbitrate and prejudiced Donelson by their inconsistent acts.

Donelson fails to show that Defendants acted inconsistently with their right to arbitrate. "A party acts inconsistently with its right to arbitrate if the party substantially invokes the litigation machinery before asserting its arbitration right." *Id.* (brackets and internal quotation marks omitted). "A party substantially invokes the litigation machinery when, for example, it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner." *Id.* "[R]equest[ing] [that a court] dispose of a case on the merits before reaching arbitration is inconsistent with resolving the case through arbitration" and also counts as substantially invoking the litigation machinery. *Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.*, 589 F.3d 917, 921 (8th Cir. 2009) (holding that moving to dismiss for failure to state a claim three months prior to moving to arbitrate "substantially invoked the litigation machinery").

Donelson argues that Defendants substantially invoked the litigation machinery by filing motions to strike his class-action allegations in his first amended complaint at the same time they moved to compel arbitration, which Donelson contends counts as requesting disposition on the merits. Donelson is mistaken. The motions to strike Donelson's class-action allegations did not request a decision on the merits. They only requested that the district court rule that Donelson's claims were individual and could not be class claims under Federal Rule of Civil Procedure 23 so that the court could compel arbitration under the terms of the Client Agreement. A motion to strike class-action allegations (without an accompanying motion to dismiss the underlying individual allegations) is not a request for the court to dispose of the case "on the merits." *See* Black's Law Dictionary (11th ed. 2019) (defining "judgment on the merits" as "[a] judgment based on the evidence rather than on technical or procedural grounds"); *see also Dumont*, 258 F.3d at 886-87 (holding that a party's motion to dismiss based on jurisdictional or quasi-jurisdictional grounds, which included a statement that it would seek to compel arbitration, was not inconsistent with a known right to compel arbitration). This is especially the case here, where the purpose of moving to strike was so that the district

court could compel arbitration under the terms of the Client Agreement. *See Morgan v. Sundance*, 992 F.3d 711, 714 (8th Cir. 2021) (holding that, when a party makes efforts to avoid invoking the litigation machinery, this weighs in favor of finding that the party did not act inconsistently with its right to arbitrate).

Defendants did not substantially invoke the litigation machinery by moving to strike Donelson's class-action allegations. Therefore, they have not acted inconsistently with their right to arbitrate, meaning they have not waived this right.

Thus, we have jurisdiction to hear this case, and Defendants have not waived their right to arbitrate.

**IV.**

Next, we turn to the merits of Defendants' appeal. We begin by addressing Defendants' argument that, under *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967), the district court erred by determining the enforceability of the contract containing the arbitration clause because an arbitrator should have made that determination. Ordinarily, we review *de novo* whether the district court or the arbitrator should have determined arbitrability. *See Fallo v. High-Tech Inst.*, 559 F.3d 874, 877 (8th Cir. 2009). As Donelson points out, however, Defendants forfeited the *Prima Paint* argument by not raising it in the district court. Therefore, we review this issue for plain error at most. *See Plummer v. McSweeney*, 941 F.3d 341, 345 (8th Cir. 2019) (holding that the argument that an arbitrator rather than a court should have decided a matter relating to contract enforceability was "an entirely new issue" on appeal rather than "merely a new argument" and therefore was reviewed, at most, for plain error when it was not made in the district court). Defendants cannot satisfy the plain-error standard because "the requirement to proceed in a federal court can hardly be considered a miscarriage of justice necessitating plain-error relief." *Id.* (internal quotation marks omitted). Thus, the district court's determination of arbitrability does not require reversal under plain-error review.

## V.

Next, we consider Defendants' claim that the district court erred in denying their motions to compel arbitration. The district court denied the motion to compel arbitration because it found that there was no valid arbitration clause between the parties due to the absence of mutual agreement and lack of consideration. The district court went on to deny the motions to strike the class-action allegations, suggesting that Donelson's allegations met Rule 23(a)(2)'s "single common question" requirement and that the Defendants' arguments to the contrary were "more appropriate on a motion for class certification."

We review *de novo* a district court's ruling on a motion to compel arbitration under § 4 of the FAA. *See M.A. Mortenson Co. v. Saunders Concrete Co.*, 676 F.3d 1153, 1156 (8th Cir. 2012). Under the FAA, "[a] motion to compel arbitration must be granted if a valid arbitration clause exists which encompasses the dispute between the parties." *Id.* at 1156-57 (internal quotation marks omitted). We conclude both that a valid arbitration clause exists and that it encompasses the dispute between the parties.

## A.

With respect to the validity issue, the parties disagree about the threshold question of which law governs this issue. Donelson argues that Missouri substantive law governs whether the arbitration clause is valid. Sachse claims that Minnesota substantive law controls in light of a choice-of-law clause in the Client Agreement so providing. We need not resolve this dispute because, even assuming that Donelson is right about Missouri substantive law governing this issue, we agree with Defendants that the arbitration clause is valid. *See Am. Broad. Cos. v. Aereo, Inc.*, 573 U.S. 431, 445 (2014) (assuming for the sake of argument that one part of the losing party's argument was correct but holding that, even so, the losing party would not prevail for other reasons).

On the merits of this issue, Defendants argue that the district court erred when it refused to enforce the arbitration clause on the basis that it was not supported by mutual assent or consideration. Donelson also argues that the arbitration clause was invalid because it was unconscionable. We agree with Defendants that the arbitration clause was valid because it was supported by mutual assent, was supported by consideration, and was not unconscionable.

First, the parties mutually assented to the arbitration clause. Under Missouri law, "[a] valid arbitration clause . . . requires mutuality of agreement, which implies a mutuality of assent by the parties to the terms of the contract." *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 810 (Mo. 2015) (internal quotation marks omitted). Parties may assent to terms expressly in a contract or "incorporated into the contract by reference" so long as "[t]he intent to incorporate [is] clear." *See id.* "To incorporate terms from another document, the contract must make clear reference to the document and describe it in such terms that its identity may be ascertained beyond a doubt." *Id.* at 810-11 (brackets and internal quotation marks omitted); *see also Dunn Indus. Grp. v. City of Sugar Creek*, 112 S.W.3d 421, 435 (Mo. 2003) (holding that an arbitration clause can be incorporated by reference into a contract).

Defendants argue that the district court erroneously ruled that Donelson had not "knowingly accept[ed] the terms of the Client Agreement" based on its findings that Donelson never signed or received the Client Agreement (which included the arbitration clause) and Donelson was not shown the Account Application. Defendants are correct.

Though Sachse did not provide Donelson with a copy of the Client Agreement, which contained the arbitration clause, Donelson still agreed to the arbitration clause because he was presented with and signed the Account Application, which expressly incorporated the arbitration clause in the Client Agreement. It stated:

> You acknowledge that you have received and read the [Client] Agreement and agree to abide by the terms and conditions as currently in effect . . . . You hereby consent to all these terms and conditions with full knowledge and understanding . . . . This account is governed by a predispute arbitration clause which is found in Section 26, Page 3 of the [Client] Agreement . . . .

Thus, the arbitration clause was clearly incorporated by reference in the Account Application. *See Kerr*, 461 S.W.3d at 810-11. And because Donelson signed the Account Application, there was mutual assent to the arbitration clause. *See Chochorowski v. Home Depot U.S.A.*, 404 S.W.3d 220, 228 (Mo. 2013) ("A signer's failure to read or understand a contract is not, without fraud or the signer's lack of capacity to contract, a defense to the contract.").

Second, the arbitration clause was supported by consideration because Ameriprise provided a client account to Donelson. In general, "bilateral contracts are supported by consideration and enforceable when each party promises to undertake some legal duty or liability." *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 776 (Mo. 2014). But when the promises of one party are illusory rather than binding, there is no consideration. *Id.* "A promise is illusory when one party retains the unilateral right to amend the agreement and avoid its obligations." *Id.* But, "[i]f two considerations are given for a promise, one . . . legally sufficient . . . and the other not . . . , the promise is enforceable." *Id.* at 774.

Relying on *Baker*, Donelson argues that the arbitration agreement lacks consideration because Ameriprise retained the unfettered right to amend the Client Agreement containing the arbitration clause. In *Baker*, an employee and her employer entered into an agreement in which the parties agreed to arbitrate all legal claims against the other. *Id.* at 773. This arbitration agreement stated that consideration consisted of the employee's continued employment and mutual promises to resolve claims through arbitration. *Id.* But the agreement also clarified that the employee was an at-will employee and that the employer could unilaterally amend, modify, or revoke the agreement upon thirty days' prior written notice to the

-11-

employee. *Id*. at 773. The Missouri Supreme Court held that the arbitration agreement failed for lack of consideration because the two sources of consideration were illusory. *Id*. at 776-77.

But *Baker* is inapposite here because the source of consideration supporting the arbitration clause is not illusory and because Ameriprise does not have the unilateral right to amend the Client Agreement. The Client Agreement states:

> You agree that we shall have the right to amend this Agreement by modifying or rescinding any existing provisions or by adding any new provision. You understand and acknowledge that we may modify or change the terms and conditions of this Agreement by mailing a written notice of the modification or change or a new printed Agreement to you . . . . Such written notice or posting of the amendment will include the effective date of the modification or change. No such amendment shall become effective prior to 30 days from the date of such notice . . . . The use of your account after the mailing of any written notice . . . shall constitute your acknowledgement and agreement to be bound thereby.

Though this provision permits modification of the Client Agreement, it also specifies that "use of your account . . . shall constitute your acknowledgement and agreement to be bound thereby." Thus, the amendment provision presupposes that an account will still be provided, which constitutes consideration. *See id.* at 774 (defining consideration in part as "the transfer . . . of something of value to the other party"). In addition, unlike in *Baker*, Ameriprise does not have the right to unilaterally change the Client Agreement. *See id*. at 773. Rather, any change requires "acknowledgement and agreement" by Donelson in the form of "use of [his] account."

Third, the arbitration agreement is not unconscionable. Donelson claims that the arbitration provision is unconscionable because it requires him to arbitrate all claims he may have against Ameriprise, but Ameriprise is not required to arbitrate all claims it may have against him. "Unconscionability is defined as an inequality so strong, gross, and manifest that it must be impossible to state it to one with

-12-

common sense without producing an exclamation at the inequality of it." *Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 432 (Mo. 2015) (internal quotation marks omitted). The unconscionability doctrine "guards against one-sided contracts, oppression, and unfair surprise." *Id.* But the fact that an arbitration provision applies to one party but not the other does not itself render the provision unconscionable. *Id.* at 433-34. Therefore, even assuming that the arbitration provision applied only to Donelson, it would not be unconscionable.

Because the arbitration clause was supported by mutual consent, was supported by consideration, and was not unconscionable, it is valid and thus enforceable.

B.

Because the arbitration clause is valid, we must consider whether it "encompasses the dispute between the parties." *See M.A. Mortenson*, 676 F.3d at 1156-57. By its own terms, the arbitration clause provides for arbitration of "ALL CONTROVERSIES THAT MAY ARISE BETWEEN US[2] . . . , WHETHER ARISING BEFORE, ON OR AFTER THE DATE THIS ACCOUNT IS OPENED," except for "PUTATIVE OR CERTIFIED CLASS ACTION[S]." Thus, whether the arbitration clause encompasses this case turns on whether the class-action allegations should be stricken, as Defendants argue they should. Accordingly, we consider whether the district court abused its discretion when it denied Defendants' motions to strike Donelson's class-action allegations. *See Nationwide Ins. v. Cent. Mo. Elec. Co-op., Inc.*, 278 F.3d 742, 748 (8th Cir. 2001) (reviewing a motion to strike for abuse of discretion).

Under Federal Rule of Civil Procedure 12(f), "the court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or

---

[2]Before the district court, Donelson argued that "US" did not include Sachse or the Ameriprise officers, but this issue has not been raised on appeal.

scandalous matter." "Judges enjoy liberal discretion to strike pleadings under Rule 12(f)." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). And because this remedy is "drastic" and "often is sought by the movant simply as a dilatory or harassing tactic," *see* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 (3d ed.), "[s]triking a party's pleading . . . is an extreme and disfavored measure," *BJC Health*, 478 F.3d at 917; *see* Wright & Miller, *supra*, § 1380. But despite this, it is sometimes appropriate to strike pleadings, such as when a portion of the complaint lacks a legal basis. *See, e.g., BJC Health*, 478 F.3d at 916-18 (affirming a district court's grant of a motion to strike the plaintiff's prayer for punitive damages on the basis that fraud had not been pleaded with the particularity required by Rule 9(b)).

Federal courts are split as to whether class-action allegations may be stricken under Rule 12(f) prior to the filing of a motion for class-action certification when certification is a clear impossibility. Some courts permit this. *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011); *cf. John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 444-45 (5th Cir. 2007) (affirming dismissal of unsupportable class-action allegations on Rule 12(b)(6) motion). Others deny as premature motions to strike class-action allegations made before a plaintiff moves to certify a class. *See, e.g.*, *Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698, 706-07 (D.N.J. 2013).

We agree with the Sixth Circuit that a district court may grant a motion to strike class-action allegations prior to the filing of a motion for class-action certification. It is "sensible . . . to permit class allegations to be stricken at the pleading stage" if it is "apparent from the pleadings that the class cannot be certified" because "unsupportable class allegations bring 'impertinent' material into the pleading" and "permitting such allegations to remain would prejudice the defendant by requiring the mounting of a defense against claims that ultimately cannot be sustained." Wright & Miller, *supra*, § 1383. This is consistent with Rule 23(c), which governs class-action certification, because Rule 23(c)(1)(A) directs district courts to decide whether to certify a class "[a]t an early practicable time," and

nothing in Rule 23(c) indicates that the court must await a motion by the plaintiffs. *See Pilgrim*, 660 F.3d at 949.

We conclude it was an abuse of discretion for the district court to deny the motions to strike the class-action allegations. We reach this conclusion because not only was it apparent from the pleadings that Donelson could not certify a class but also the class allegations were all that stood in the way of compelling arbitration. As for Counts I and II, Donelson cannot maintain a class action because the class claims would not be cohesive. As for Count III, Donelson cannot maintain a class action because that cause of action could not provide the injunctive or declaratory relief required by Rule 23(b)(2).[3] Under these circumstances, delaying the decision on whether Donelson could certify a class would needlessly force the parties to remain in court when they previously agreed to arbitrate. It also risks forcing Defendants to litigate, until the district court rules on Donelson's not-yet-filed motion for class certification, with one hand tied behind their backs to avoid substantially invoking the litigation machinery and waiving their right to arbitrate.

With respect to Counts I and II, the class-action allegations should have been stricken because class claims based on these counts would not be cohesive. Rule 23(b)(2) permits "[a] class action [to] be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." To certify a class under Rule 23(b)(2), the "class claims . . . must be cohesive." *In re St. Jude Med. Inc.*, 425 F.3d 1116, 1121 (8th Cir. 2005). "[T]he cohesiveness requirement of Rule 23(b)(2) is more stringent than the predominance and superiority requirements for maintaining a class action under Rule 23(b)(3)." *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016). The existence of a significant number of individualized factual and legal issues defeats cohesiveness and is a proper reason to deny class certification

---

[3]At oral argument, Donelson clarified that he seeks to maintain a class action only under Rule 23(b)(2).

under Rule 23(b)(2). *St. Jude*, 425 F.3d at 1122. A significant number of individualized factual and legal issues exist "where members of a proposed class will need to present evidence that varies from member to member" such that the class claim is not "susceptible to generalized, class-wide proof." *See Ebert*, 823 F.3d at 478-79 (internal quotation marks omitted).

Here, Donelson cannot bring a Rule 23(b)(2) class action with respect to Counts I and II because a significant number of individualized determinations must be made in deciding whether the class members' claims have merit. Count I asserts violations of § 10(b) of the Securities Exchange Act and Rule 10b-5. Count II asserts violations of § 20(a) of the Securities Exchange Act. For Count I, the putative class would have to show "(1) misrepresentations or omissions of material fact or acts that operated as a fraud or deceit in violation of the rule; (2) causation, often analyzed in terms of materiality and reliance; (3) scienter on the part of the defendants; and (4) economic harm caused by the fraudulent activity occurring in connection with the purchase and sale of a security." *In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 888 (8th Cir. 2002). At least three of these four elements would require a significant number of individualized factual and legal determinations to be made, as the allegations in the first amended complaint demonstrate. For instance, whether Sachse or any of the other defendants committed misrepresentations, whether those misrepresentations were material, whether class members relied on the misrepresentations, and whether economic harm resulted from the misrepresentations would need to be resolved separately for each class member. *See Ebert*, 823 F.3d at 479-81 (noting that "even if a determination [could] be made class-wide on the fact and extent of [the defendant's] role," a number of matters would "*still* need to be resolved household by household" and therefore the claims lacked cohesiveness); *Avritt v. Reliastar Life Ins.*, 615 F.3d 1023, 1037 (8th Cir. 2010) (holding that a class was "not cohesive enough to satisfy Rule 23(b)(2)" because "resolution of the plaintiffs' claims would require numerous individual determinations regarding [the defendant's] representations and each purchaser's reliance"); *cf. McCrary v. Stifel, Nicolaus & Co.*, 687 F.3d 1052, 1059 (8th Cir. 2012) (affirming a district court's dismissal of a Rule 23(b)(3) class action alleging

churning, unauthorized trading, and misrepresentation by a broker and his firm on the basis that such claims are highly individualized).

The same is true for Count II. For a § 20(a) violation, Donelson must prove "(1) that a primary violator violated the federal securities laws; (2) that the alleged control person actually exercised control over the general operations of the primary violator; and (3) that the alleged control person possessed—but did not necessarily exercise—the power to determine the specific acts or omissions upon which the underlying violation is predicated." *Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010) (internal quotation marks omitted). Here, the violations of the federal securities laws needed for element (1) are the alleged violations of § 10(b) and Rule 10b-5 on which Count I is based. Therefore, Count II requires the same individualized determinations as Count I, which defeat cohesiveness.

As for Count III, breach of fiduciary duty under 15 U.S.C. § 80b-6, the class-action allegations should have been stricken because Donelson cannot obtain the relief required by Rule 23(b)(2) for this count. There is no private cause of action for violations of this section of the statute. *See Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19-20 (1979) (holding that Congress did not provide a private right of action for § 80b-6 because the statute expressly provided other means of enforcing compliance with its terms). Rule 23(b)(2) permits a class action to be maintained if "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Because § 80b-6 does not afford any relief to private litigants, much less injunctive or declaratory relief, Donelson cannot certify class claims under Rule 23(b)(2) for violations of § 80b-6.[4]

---

[4]To the extent Donelson claims that he can establish a class under § 80b-15 of the Investment Advisors Act, he has waived this argument. Section 80b-15 permits private parties to bring a cause of action solely to declare certain contracts void because they were made in violation of the Investment Advisors Act. *Transamerica*, 444 U.S. at 16-19. Even assuming this would be sufficient injunctive or declaratory relief under Rule 23(b)(2), the only contracts Donelson seeks to avoid are the arbitration clauses in the Client Agreements. But Donelson does not even hint at

The district court abused its discretion by denying Defendants' motions to strike without considering whether Donelson could bring a class action under Rule 23(b), as it is "apparent from the pleadings that the class cannot be certified" under Rule 23(b)(2). *See* Wright & Miller, *supra*, § 1383. Because the class-action allegations should have been stricken, the dispute between the parties here should have been deemed one encompassed by the arbitration clause. *See M.A. Mortenson*, 676 F.3d at 1156.

\* \* \*

In sum, the arbitration clause in question here is valid, and it encompasses the dispute between the parties. *See id.* Therefore, Defendants' motions to compel arbitration "must be granted," *see id.* at 1156-57, and the district court erred in denying them.

## VI.

Thus, we reverse the district court's denial of Defendants' motions to strike the class-action allegations and to compel arbitration, and we remand for entry of an order striking the class-action allegations and compelling arbitration.

_____

_____

how the arbitration clauses violate the Investment Advisors Act. Because his argument that the arbitration clause violates the Investment Advisors Act consists of nothing more than a sentence in his brief without argument or citation to legal authority, we deem this argument waived and hold that he cannot certify a class under § 80b-15 to invalidate the arbitration agreements. *See Milligan v. City of Red Oak, Iowa*, 230 F.3d 355, 360 (8th Cir. 2000) ("[I]nasmuch as [the appellant's] brief does not support his assertion with any argument or legal authority, he has waived the issue and we do not address it.").