# United States Court of Appeals

## For the Eighth Circuit

_____

No. 21-1679

_____

Benchmark Insurance Company

*Plaintiff*

v.

SUNZ Insurance Company

*Defendant - Appellant*

SUNZ Insurance Solutions, LLC

*Defendant*

Butler American Holdings Inc.; Century Employer Organization, LLC

*Defendants - Appellees*

IS Development Group

*Defendant*

Payday, Inc.

*Defendant - Appellee*

Staff Pro, LLC

*Defendant*

_____

ERICKSON, Circuit Judge.

SUNZ Insurance Company ("SUNZ") appeals from the denial of its motion to dismiss or, in the alternative, to compel arbitration of the crossclaims filed in this procedurally complex insurance dispute. SUNZ argues the district court lacked subject matter jurisdiction over the crossclaims between non-diverse parties in the underlying interpleader action and otherwise erred by denying arbitration. We reverse and remand.

## I.    BACKGROUND

This litigation stems from agreements between several insurance companies to provide large deductible workers' compensation policies in multiple states. Under such an arrangement, insurers typically require the insured to post collateral to cover claims within the deductible range as a condition of coverage. SUNZ is a Florida insurance company licensed to write workers' compensation policies in 16 states. SUNZ Insurance Solutions, LLC ("SIS") is an affiliate of SUNZ. Benchmark Insurance Company ("Benchmark") is a Kansas insurance company with its principal place of business in Minnesota licensed to write workers' compensation policies in 49 states plus the District of Columbia.

In 2015, Benchmark and SIS signed a Program Manager Agreement which allowed SUNZ to provide coverage to insureds in markets where it was not licensed.

Under the agreement, Benchmark issued large deductible workers' compensation policies to be managed and administered by SIS. Benchmark and SIS also signed a Large Deductible General Agent Agreement, whereby SIS would collect deductible collateral from insureds under the policies that SIS issued on Benchmark's behalf. And, under a Reinsurance Contract, Benchmark ceded to SUNZ all the premiums and losses on the policies that SIS issued on Benchmark's behalf. In October 2016, SUNZ and Benchmark signed a Reinsurance Treaty Trust Agreement which directed SUNZ to deposit funds to be held in trust for Benchmark's benefit and applied to SUNZ's liabilities under the partnership.

Payday, Inc. ("Payday") and Century Employer Organization, LLC ("Century") are two Florida companies that entered into materially identical Program Agreements with SIS in April and October 2017, respectively. These Program Agreements, which are governed by Florida law, set forth the binding terms and conditions of the forthcoming insurance policies between the parties. Each Program Agreement contains a broad arbitration clause applicable to "any controversy or claim arising out of or relating in any way to this [Program] Agreement or the breach or alleged breach hereof." The agreements also purport to be "binding and effective" as to the respective parties, in addition to "the insurance companies issuing any of the policies pursuant to this Insurance Program." However, the first page of each Program Agreement also states that the insurance policy will prevail in the case of a conflict between the Program Agreement and the insurance policy. Both Payday and Century obtained large deductible workers compensation insurance policies from SIS (the "Policies").

In late 2017, SUNZ terminated its business relationship and relevant agreements with Benchmark. No new policies were issued or renewed after that time, but insureds could continue to file claims under their existing policies. On January 27, 2020, SUNZ served Benchmark with an arbitration demand seeking the release of approximately $50.5 million in excess collateral held by Benchmark and related to the terminated partnership.

-3-

In April 2020, Benchmark filed an interpleader action in the district court, naming various interpleader defendants, including SUNZ and 35 insureds—including Payday and Century—that were issued policies under Benchmark's prior relationship with SUNZ and SIS. In short, Benchmark alleged SUNZ wrongly co-mingled collateral deposits and trust funds with respect to the policies issued by SIS on Benchmark's behalf. According to Benchmark, it was holding a large sum of excess collateral that could be claimed by any of the named interpleader defendants.

In May 2020, SUNZ filed a counterclaim against Benchmark, alleging breach of the Reinsurance Treaty Trust Agreement. In June 2020, Payday and Century—represented by the same counsel—filed materially identical crossclaims for breach of contract against SUNZ.[1] Both Payday and Century alleged their Program Agreements were rendered void because they were never filed with, or approved by, a state insurance regulatory authority. They also argued that the insurance policies themselves supersede the Program Agreements, that SUNZ improperly increased the collateral required under the policies, and that SUNZ improperly administered the policies.

On June 8, 2020, Benchmark deposited interpleader funds totaling $20,533,594 into the district court's registry. Benchmark was then discharged from liability in the interpleader action.[2] All but three of the interpleader defendants disclaimed any interest in the deposited funds and requested that the district court release their potential share of interpleader funds to SUNZ. The district court released $19.3 million to SUNZ and dismissed those interpleader defendants. The remaining funds were subject to competing claims by Payday ($4,352), Century ($1,003,844), and Butler America Holdings, Inc. ("Butler") ($271,918). Butler later disclaimed its interest, prompting the district court to release $271,918 to SUNZ and

---

[1]Century and Payday also filed simultaneous counterclaims against Benchmark, which are not part of this appeal.

[2]The discharge did not affect SUNZ's counterclaim.

dismiss Butler as an interpleader defendant. Only Florida companies Payday, Century and SUNZ remained in the interpleader action.

SUNZ moved to dismiss Payday's and Century's crossclaims or, in the alternative, to compel arbitration. SUNZ asserted that the district court lacked jurisdiction over the state-law contract claims because the parties were not diverse. After finding that the crossclaims derived from the same case or controversy as the original interpleader action, the district court decided to exercise supplemental jurisdiction and denied the motion to dismiss. The district court denied without analysis the alternative motion to compel arbitration, explaining that it was "not convinced" whether the crossclaims fall within the scope of an operative arbitration clause.

During the pendency of this appeal, the claims between SUNZ and Century were resolved through a joint stipulation agreement. The crossclaims between SUNZ and Payday remain in dispute.

## II.   DISCUSSION

We have jurisdiction over this interlocutory appeal under § 16 of the Federal Arbitration Act ("FAA"). See 9 U.S.C. § 16(a)(1)(B); see also Donelson v. Ameriprise Fin. Servs., Inc., 999 F.3d 1080, 1087 (8th Cir. 2021) (appellate court has jurisdiction to review the entire district court order on appeal from denial of a motion to compel arbitration). We consider *de novo* whether the district court properly exercised subject matter jurisdiction, Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A., 551 F.3d 812, 816 (8th Cir. 2009), and whether the district court erred when it denied a motion to compel arbitration. Duncan v. Int'l Markets Live, Inc., 20 F.4th 400, 402 (8th Cir. 2021). "The burden of establishing that a cause of action lies within the limited jurisdiction of the federal courts is on the party asserting jurisdiction[.]" Ark. Blue Cross & Blue Shield, 551 F.3d at 816 (citation omitted).

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). "Claims within the action are part of the same case or controversy if they derive from a common nucleus of operative fact." Myers v. Richland Cty., 429 F.3d 740, 746 (8th Cir. 2005) (quotation omitted). Claims derive from a common nucleus of operative fact if they are "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). "Once original jurisdiction exists, supplemental jurisdiction over all related claims is mandatory, absent certain statutory exceptions." ABF Freight Sys., Inc. v. Int'l Bros. of Teamsters, 645 F.3d 954, 963 (8th Cir. 2011); see also Fed. R. Civ. P. 13(g) ("A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action.").

Benchmark filed an interpleader action naming SUNZ and 35 defendants, including Payday, and alleging each of those defendants had possible claims to excess collateral from comingling of funds by SUNZ. The district court had original jurisdiction over this civil action under the interpleader statute. 28 U.S.C. § 1335. The purpose of § 1335 is to protect a stakeholder who may be subject to independent liability from double litigation or even double liability. Dakota Livestock Co. v. Keim, 552 F.2d 1302, 1307 (8th Cir. 1977). Consistent with the purpose of § 1335, the Supreme Court has noted that "the exercise of ancillary jurisdiction over nonfederal claims has often been upheld in situations involving impleader, cross-claims or counterclaims." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 375 (1978). In such cases, "the context in which the nonfederal claim is asserted is crucial." Id. at 376.

Turning to the nonfederal claims, Payday's crossclaim involves allegations of breach of contract by SUNZ, including the unlawful application of conflicting

Program Agreement terms to increase Payday's collateral, fee, and cost requirements under the Policy, as well as allegations of mismanagement and misappropriation of collateral and premium payments by SUNZ. Any liability under the crossclaim cannot be determined without analyzing the Program Agreement and the allegations regarding excess collateral and mismanagement by SUNZ—the same questions at the heart of the original interpleader suit. In addition, both the Program Agreement and the Policy must be read and construed together to determine any crossclaim liability. Payday's crossclaim cites to the Program Agreement no less than nine times. Because Payday's crossclaim is so intertwined with the original interpleader claim, the district court did not err in exercising supplemental jurisdiction over the nonfederal claims.

We next consider whether the district court erred when it denied SUNZ's alternative motion to compel arbitration. Arbitration agreements are generally favored under federal law. See Duncan, 20 F.4th at 402; Shockley v. PrimeLending, 929 F.3d 1012, 107 (8th Cir. 2019). "[A]rbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. ___, 139 S.Ct. 524, 526 (2019) (citation omitted). "Under the FAA, '[a] motion to compel arbitration must be granted if a valid arbitration clause exists which encompasses the dispute between the parties.'" Donelson, 999 F.3d at 1089 (quoting M.A. Mortenson Co. v. Saunders Concrete Co., 676 F.3d 1153, 1156–57 (8th Cir. 2012)).

"[A] court may not 'rule on the potential merits of the underlying' claim that is assigned by contract to an arbitrator, 'even if it appears to the court to be frivolous.'" Henry Schein, Inc., 139 S. Ct. at 529 (quoting AT&T Tech., Inc. v. Commc'ns Workers, 475 U.S. 643, 649–50 (1986)). Here, the Program Agreement sets forth the terms and conditions of the Policy, and contains the disputed statements pertaining to collateral, costs, and fees. The Policy cannot be read without the Program Agreement, which explicitly controls the administration of the Policy and only becomes binding and enforceable after its execution. While Payday's crossclaim alleges that SUNZ breached the Policy, it is the Program Agreement that

drives the question of liability. And, under the Program Agreement both parties agreed to submit to arbitration any disagreement regarding its terms.

Challenges to the validity of an agreement to arbitrate are distinct from challenges to the entire contract, which include claims such as fraudulent inducement or whether the unlawfulness of one of the contract's provisions renders the entire contract invalid. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 (2006). The Supreme Court has made clear that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." Id. at 445–46; see also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 402–03 (1967). Payday does not challenge the validity of the arbitration clause itself but instead contends the Program Agreement has been superseded by the Policy, which rendered it void. This is a challenge to the contract's validity that, under Buckeye, shall be considered by an arbitrator, not a court. The district court erred when it denied SUNZ's alternative motion to compel arbitration.

## III.   CONCLUSION

We reverse the district court's denial of SUNZ's motion to compel arbitration of the crossclaims and remand to the district court for proceedings consistent with this opinion.

_____