# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-3232
_____

Roderick Ford,

*Plaintiff - Appellee*,

v.

TD Ameritrade Holding Corporation; TD Ameritrade, Inc.; Frederic J. Tomczyk,

*Defendants - Appellants*.
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: March 14, 2024
Filed: September 3, 2024
_____

Before COLLOTON, Chief Judge, ERICKSON and KOBES, Circuit Judges.
_____

COLLOTON, Chief Judge.

This is a second interlocutory appeal from an order of the district court certifying a class in this case under Federal Rule of Civil Procedure 23(b)(3). We reversed the first order. Because we conclude that the proposed class does not satisfy the requirements of Rule 23, we reverse and remand.

# I.

TD Ameritrade offers brokerage services to retail investors. TD Ameritrade customers can trade stocks by submitting orders through the company's online platform. The company itself does not execute customer orders, but instead routes orders to trading venues (such as a stock exchange) for fulfillment. The company generally transmits orders using a computerized routing system.

Ford was appointed in 2014 as lead plaintiff for a group of investors who purchased and sold securities through TD Ameritrade between 2011 and 2014. He alleges that TD Ameritrade's order-routing practices violate the company's "duty of best execution." The duty of best execution requires that brokers "use reasonable efforts to maximize the economic benefit to the client in each transaction." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 173 (3d Cir. 2001) (internal quotation omitted). Ford asserts that the company systematically sends customer orders to trading venues that pay the company the most money, rather than to venues that provide the best outcome for customers.

Ford claims that TD Ameritrade, its parent company, and its chief executive officer, Frederic J. Tomczyk, violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and the Securities and Exchange Commission's Rule 10b-5. 17 C.F.R. § 240.10b-5. The complaint also asserts that Tomczyk is jointly and severally liable as a "controlling person" of the company under § 20(a) of the Act. 15 U.S.C. § 78t(a).

Ford moved for class certification in 2017. A magistrate judge recommended denying the motion because common issues did not predominate over individual questions of economic loss. The district court determined that Ford's expert had developed an algorithm that could solve the predominance problem by making automatic determinations of economic loss for each customer. The court then

certified a class consisting of "[a]ll clients of TD Ameritrade between September 15, 2011 and September 15, 2014 who placed orders that did not receive best execution, in connection with which TD Ameritrade received either liquidity rebates or payment for order flow, and who were thereby damaged."

We reversed the district court's order certifying the class because individual questions of economic loss precluded a conclusion that common issues predominated. *Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616, 624 (8th Cir. 2021). We explained "that despite advances in technology, individual evidence and inquiry is still required to determine economic loss for each class member." *Id.* at 623.

Ford moved again for class certification under Rule 23(b)(3) in 2021. His new proposed class consists of "(1) all clients of TD Ameritrade between September 15, 2011 and September 15, 2014; (2) who placed orders that were electronically routed by TD Ameritrade without manual review; (3) in connection with which TD Ameritrade received either liquidity rebates or payment for order flow; and (4) who paid a commission to TD Ameritrade for execution of an order." Ford also renewed his request for class certification under Rule 23(b)(2) and (c)(4).

The district court certified a class under Rule 23(b)(3). The court explained alternatively that if certification under Rule 23(b)(3) were not proper, then it would certify classes under Rule 23(b)(2) and (c)(4).

This court permitted the defendants to appeal the class certification order. *See* Fed. R. Civ. P. 23(f). We review the order for abuse of discretion. *IBEW Loc. 98 Pension Fund v. Best Buy Co.*, 818 F.3d 775, 779 (8th Cir. 2016).

II.

To justify certification of a class, plaintiffs must meet the requirements of Federal Rule of Civil Procedure 23(a) and satisfy one of the three subsections of Rule 23(b). The district court certified a class based on Rule 23(b)(3) for the second time. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

An individual question is one on which evidence varies from member to member; a common question is one where the same evidence suffices for each member to make a *prima facie* showing. *Ford*, 995 F.3d at 620. If the plaintiffs' method of proving their claim includes individualized inquiries inconsistent with Rule 23, then the class cannot be certified. *Id.*

Ford alleges that TD Ameritrade violated § 10(b) of the Securities Exchange Act and Rule 10b-5. We do not address the merits at this stage, but we do consider the nature of the underlying claim to determine its suitability for class certification. *See Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030, 1033 (8th Cir. 2020). To recover damages for violations of § 10(b) and Rule 10b-5, a plaintiff must prove "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460-61 (2013) (internal quotation omitted).

To succeed on the merits of his claim, Ford must show that TD Ameritrade's order routing practices caused its customers to suffer economic loss. *See id.* In our prior decision, we explained that "the economic loss allegedly caused by TD

Ameritrade's order routing practices is 'the difference between the price at which [customers'] trades were executed and the "better" price allegedly available from an alternative trading source.'" 995 F.3d at 621 (internal quotation omitted).

In Ford's renewed motion for class certification, he advances a different theory of economic loss than he did in his first motion. Ford now argues that "paying a commission to TD Ameritrade in exchange for brokerage services that were not provided constitutes an economic loss for the customer." He asserts that this view of economic loss means that common issues predominate because the "loss was suffered by every class member in a similar manner and in an amount that may be easily calculated from the number of trades executed by TD Ameritrade for each customer and the amount of commission paid."

Ford's modified theory of economic loss, however, does not align with our definition of economic loss in the previous decision. A commission is not the difference between the price at which customers' trades were executed and a better price available elsewhere. *See id.* A commission is a flat rate that says nothing about the best price reasonably available under the circumstances at the time of a trade. Showing that a customer paid a commission to TD Ameritrade does not establish that the customer is worse off than if the customer had used a different broker.

Ford argues that economic loss is not so limited. He contends that even if a customer received a good price on the trade, the customer still suffered a loss because he did not receive the value of the services for which he paid via the commission. But Ford relies on "churning" cases in which the defendants fraudulently induced customers to request trades for the sake of generating commissions, so the commissions were the proper measure of loss. *See Davis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 906 F.2d 1206, 1217-18 (8th Cir. 1990); *McGinn v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 736 F.2d 1254, 1257 (8th Cir. 1984). In a best-execution case, the claim is that the broker's misconduct resulted in a sub-optimal

result on the trades themselves, regardless of the commissions. The alleged misconduct does not affect the amount of commissions paid.

Even if commission fees could be a form of economic loss in a best-execution case, individualized questions would defeat the predominance requirement. As we explained in the first decision, if the plaintiffs' method of proving their claim would "include individualized inquiries that cannot be addressed in a manner consistent with Rule 23, then the class cannot be certified." 995 F.3d at 620 (quoting *Harris*, 953 F.3d at 1035). Whether a flat-rate commission fee resulted in economic loss would still require analysis of individualized questions, such as the existence of alternative brokers, the commission fees of other brokers, and the prices that other brokers could have obtained for each trade. The district court thus abused its discretion in certifying a class under Rule 23(b)(3).

## III.

The district court stated that if certification were not proper under Rule 23(b)(3), then it would certify an injunctive class under Rule 23(b)(2) and an issues class under Rule 23(c)(4). We understand the order to mean that if this court were to reverse the certification under Rule 23(b)(3), then the alternative certifications would go into effect. On that basis, we think the formality of a remand is unnecessary, and this court has jurisdiction to review the alternative certification order. The parties do not dispute that these issues are properly before us on this appeal.

"Class certification under Rule 23(b)(2) is proper only when the primary relief sought is declaratory or injunctive." *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1121 (8th Cir. 2005). Class claims must be "cohesive," and "[i]njuries remedied through (b)(2) actions are really group, as opposed to individual injuries." *Id.* at 1121-22 (internal quotation omitted).

The district court explained that "[t]he injunctive relief would require TD Ameritrade to alter its routing practices and/or public disclosures so that its conduct is no longer deceptive." This alternative certification, however, fails for the same reasons that made it improper to certify the class under Rule 23(b)(3). The "cohesiveness" requirement under Rule 23(b)(2) is more stringent than the predominance requirement of Rule 23(b)(3). *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016). Here again, the circumstances of each customer's trades were unique. Determining whether a customer was harmed involves individualized questions about the type of trade, prices received, and other prices available, so certification is not appropriate. *See Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1093 (8th Cir. 2021); *Ahmad v. City of St. Louis*, 995 F.3d 635, 644 (8th Cir. 2021). And the injunctive class also fails under Ford's new theory of economic loss because TD Ameritrade no longer charges commission fees, so the requested injunctive relief would not remedy the plaintiffs' alleged past injuries. *See Berni v. Barilla S.p.A.*, 964 F.3d 141, 146-47 (2d Cir. 2020).

Rule 23(c)(4) allows a class action to be brought or maintained with respect to particular issues. Such issues classes should not be certified "where the predominance of individual issues is such that limited class certification would do little to increase the efficiency of the litigation." *In re St. Jude Med., Inc.*, 522 F.3d 836, 841 (8th Cir. 2008).

The district court explained that the Rule 23(c)(4) class would "determine the issue of liability on the merits on the question of whether TD Ameritrade complied with the duty of best execution and knowingly misrepresented its compliance with its duty of best execution during the class period." But resolution of that issue would not materially advance the litigation because too many individualized issues would remain. The court reasoned that if the plaintiffs proved that TD Ameritrade acted in violation of Rule 10b-5, then "any individual trials or determinations would be greatly simplified." In light of the extensive individual issues already discussed,

however, we do not think issue certification would materially increase efficiency in this case. *See id.*

For the foregoing reasons, we reverse the district court's order certifying a class and remand for further proceedings.

_____